TY ERIK LOPES T-58072
MULE CREEK STATE PRISON
(Petitioner on writ of habeas corpus)
P.O.BOX 409020
IONE, CA 95640



**FILED**

FEB 2 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | | |
|---|---|---|
| TY ERIK LOPES | Petitioner, | 2:06-cv-1657 MCE DAD P. |
| | | (AMENDED) |
| v. | | PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER |
| ROSANNE CAMPBELL, et,al., | Respondent, | |

# TABLE OF CONTENTS

Page

INTRINSIC CHALLENGE OF RESPONDENT'S
MEMORANDUM OF POINTS AND AUTHORITIES                3

REPLY TO RESPONDENT'S ARGUMENT                      14

I. I WAS ILLEGALLY CHARGED IN THE INFORMATION
WITH RAPE AND SPECIAL CIRCUMSTANCE
FOLLOWING MY PRELIMANARY HEARING WHICH
VIOLATED MY U.S. CONSTITUTIONAL RIGHT TO
DUE PROCESS OF LAW                                  14

Ia. THE 995 HEARING THAT FOLLOWED MY PRELIMANARY
HEARING WAS ILLEGALLY FORCED AND THE RULING
BY THE 995 JUDGE WAS ERRONEOUS BECAUSE THE
JUDGE SUBSTITUTED THE WEIGHT AND THE
SUFFICIENCY OF THE EVIDENCE FOR THAT OF THE
MAGISTRATE, VIOLATING MY U.S. CONSTITUTIONAL
RIGHT TO DUE PROCESS OF LAW                         18

II. I WAS ILLEGALLY DENIED AN ACQUITTAL ON THE
RAPE CHARGE AND THE SPECIAL CIRCUMSTANCE
CHARGE AFTER THE CLOSE OF THE PEOPLES CASE
IN CHIEF WHICH VIOLATED MY U.S.
CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW
UNDER PENAL CODE SECTION 1118.1                     20

IIa. THE TRIAL COURT LEGALLY ERRED WHEN IT DENIED
MY MOTION FOR ACQUITTAL ON THE MURDER CHARGE
AFTER THE PEOPLES CASE IN CHIEF WHICH
VIOLATED MY U.S. CONSTITUTIONAL RIGHT TO DUE
PROCESS OF LAW UNDER PENAL CODE SECTION
1118.1                                              22

(a)

IIb.     THE "EVIDENCE" WAS INSUFFICIENT TO
         SUPPORT MY CONVICTION DEPRIVING ME
         OF MY U.S. CONSTITUTIONAL RIGHT TO
         DUE PROCESS OF LAW                                    24


III.     THE PROSECUTOR DELIBERATELY AND
         MALICIOUSLY WITHHELD AND HID
         CRUCIAL EXCULPATORY DISCOVERY
         FROM ME WHICH VIOLATED MY U.S.
         CONSTITUTIONAL RIGHT TO A FAIR
         TRIAL                                                 27


IV.      MY COURT APPOINTED  TRIAL ATTORNEY
         FAILED TO ASSIST ME PROPERLY WHICH
         VIOLATED MY U.S. CONSTITUTIONAL
         RIGHT TO DUE PROCESS AND A FAIR
         TRIAL                                                 32


V.       I WAS INEFFECTIVELY ASSISTED BY MY
         COURT APPOINTED APPELLATE ATTORNEY
         WHICH VIOLATED MY U.S. CONSTITUTIONAL
         RIGHT TO DUE PROCESS OF LAW AND A
         FAIR APPEAL                                           34


VI.      JESSIE HOWLAND'S TESTIMONY OF AN
         UNCHARGED ACT OF SEXUAL ASSAULT DID
         VIOLATE MY RIGHT TO DUE PROCESS UNDER
         THE U.S. CONSTITUTION, DEPRIVING ME
         OF A FAIR TRIAL                                       36


VII.     THE TRIAL COURT DID VIOLATE MY FEDERAL
         CONSTITUTIONAL RIGHT TO DUE PROCESS OF
         LAW AND A FAIR TRIAL BY ADMITTING
         HEARSAY TESTIMONY THAT THE PROSECUTOR
         MALICIOUSLY USED TO VOUCH FOR THE
         CREDIBILITY OF ONE OF THE JAILHOUSE
         INFORMANTS, MARCUS HOPKINS                            39


VIII.    THE TRIAL COURT DID ERR WHEN IT REFUSED TO
         INSTRUCT MY JURY AND TELL THEM THAT JOSH
         BURROUGHS DID COMMITT PERJURY WHILE UNDER
         OATH, WHICH LIGHTENED THE PROSECUTOR'S
         BURDEN OF PROOF AND DENIED ME DUE PROCESS
         UNDER THE U.S. CONSTITUTION AND DENIED ME A
         FAIR TRIAL                                            43


         CONCLUSION                                            43

(b)

TY ERIK LOPES # T-58072
Petitioner on writ of habeas corpus
MULE CREEK STATE PRISON
P.O. BOX 409020
IONE, CA 95640

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| TY ERIK LOPES<br><br>Petitioner,<br><br>v.<br><br>ROSANNE CAMPBELL, et,al.,<br><br>Respondent, | 2:06-cv-1657 MCE DAD P<br><br>PETITIONER'S TRAVERSE TO<br>ANSWER |

I, TY ERIK LOPES, petitioner, am in custody as stated on page 1 of
the answer. However, I absolutely deny that I am "lawfully confined"
because my U.S. Constitutional Rights have been horribly violated.
Except as expressly admitted herein, I deny each and every allegation
of the answer and I re-affirm that my confinement is in violation of the
United States Constitution as well as the California State
Constitution.

As to No. II, III, IV, and V, on page 2 of the answer, I see no
reason to argue. However, I would respectfully request that this
court take note of the fact that my subsequent writ of habeas corpus
regarding the ineffective assistance of appellate counsel was in
regard to the failure of appellate counsel to raise the first four
grounds of my habeas corpus petition that's pending now. Those four
grounds along with ineffective assistance of appellate counsel were
denied on the merits alone. Therefore, the "last reasoned decision"

(1)

was based on the Appellate Court's determination that I did not show enough prejudice to warent relief. The California Supreme Court's subsequent "silent" denial was, therefore, based on the last reasoned decision by the Court of Appeal. As to No. VI, VII, VIII, IX and X, on page 3 of the answer, I again see no reason to argue. However, persuant to the provisions of the AEDPA, the "unreasonable application" standard of review is applicable to my claim. I allege that by applying this standard, the states court decision denying my habeas corpus petition constitutes more that just a unreasonable application of California and federal law, it constitutes a "gross" misrepresentation of the clear facts that I have rebutted by clear and convincing evidence in the record.

Because I have shown "cause and prejudice" as to the grounds in my habeas petition and that the grounds are so fundamental, as they strike at the "heart" of the criminal process, this court should excuse any procedural errors that I may have made. Furthermore, I AM A FACTUALLY INNOCENT MAN and ironclad DNA evidence--the DNA that really matters in this case--not only excluded me as the murderer, but it has also excluded Jake Silva and Ray Goans also. This fact will be discussed further in my arguement portion of my Traverse.

I incorporate by reference the Petition for Writ of Habeas Corpus, along with all supporting documents, including supporting exhibits and points and authorities previously filed. Further, I will incorporate by reference the Respondent's points and authorities in support of my Traverse.

I also allege that the "MEMORANDUM OF POINTS AND AUTHORITIES" included in the Respondent's Answer are contrary to the facts in the record and I will now summarize the "REAL FACTS" OF THE RECORD.

(2)

## STATEMENT OF FACTS *

In paragraph 1 on page 5 of the Respondent's Memorandum of Points And Authorities it states that "the marks on [Renee] Ramos' body were consistant with someone strangling her with her bra and the beads she was wearing around her neck." This is not true. On February 27,2002, Dr. John Cooper (refered to on page 9 and 10 of my habeas petition) testified. After direct examination my attorney cross examined. One of the questions my attorney asked was this question: "You testified that she was strangled with the necklesses around the neck in your opinion?" Dr. Cooper answered, "That is my opinion, yes." My attorney then asked, "And you have that opinion because of the nature of the ligature marks; is that correct?" Dr. Cooper answered, "Yes. Because we appear to have multiple parallel ones." Q. "It looks like, in fact, you've drawn three there. is that accurate?" A. "That's 'REALLY' the way it appeared." Q. "And she was wearing three necklesses; is that right?" A. "It happens that she was." (RT 398: 9-20) "That's, in fact, what I think happened," said the expert. (CT 278: 15,16) The lyingbra story was nothing but a rumor that was going all over town. I even heard it while cooking for the boyscouts up in the mountains. (RT 105: 17-28; 106: 1-16) The Respondent also states in her Memorandum of Points and Authorities, in paragraph 1, that "[Renee] Ramos died one to three days before her body was discovered--between June 2 and June 4." This would render Renee's time of death to be impossible. The record clearly shows

* These facts are taken from the pre-trial and the trial record. I intend to demonstrate that the "facts" as they have been presented up until now are to a very large extent contrary to the ACTUAL FACTS of the record.

(3)

that Renee was "LAST SEEN" on the morning of May 29,2000-which was Memorial Day.(See lines 18-23, on page 9 of my habeas petition) Dr. Cooper also testified that there were maggots that were in the mouth and the vagina of Renee Ramos. (RT 367: 19-25) The prosecutor then asked Dr. Cooper this question: "And about how long does it take for fly larva to form?" Dr. Cooper answered this way: "A rule of thumb is about '48 hours' before they hatch from the time that the body is visited by flies." (RT 367: 26-28) Therefore, June 04,2000 could not possibly be one of the days that Renee was murdered. Moreover, if Renee really was murdered on June 2, 3, or 4, then this would leave 3 full days or more that Renee is totally unaccounted for. There was no evidence to even suggest that Renee was kidnapped and being held against her will before her time of death.

As to paragraph 2. Please note that "there were no signs of alcohol or any other drug in [Renee] Ramos' system."

As to paragraph 3. Please note that the Respondent has left out the fact that "DNA FOUND IN OR ON THE FINGERNAIL CLIPPINGS OF [RENEE] RAMOS" DIDN'T MATCH ME OR ANYONE ELSE THUS FAR WHO HAS BEEN A SUSPECT. (RT 513: 3,4) 512: 19-22) The Respondent also left out the fact that "nobody could determine how long the DNA from the sperm had been deposited on [Renee] Ramos' underwear. What's more, the sperm DNA that was her "BOYFRIENDS" was found in the "crotch area" of Renee's underwear. (RT 513: 9,10; 512: 22,23) The hair found DID NOT MATCH ANY SUSPECT THUS FAR IN THIS CASE.

As to paragraph 4. Josh Burroughs WAS NOT an eyewitness to anything. Josh himself admitted over and over again that "EVERYTHING" that he "EVER" TOLD THE POLICE WAS A LIE. (See page 20 of my habeas petition) The original lead detective who became number two in charge admitted 18 months after Renee was murdered that he "still don't" know where Renee was murdered. (See page 20,21 of my habeas petition) Jessie Howland was not called to provide propensity evidence against me. Rather, it was a scheme

(4)

to put me and Renee's boyfriend together after Renee went missing. The prosecutor was caught in his scheme during a hearing on February 06, 2002, when he was overheard confering with Manteca Police Detective, Ken Wells. (See pages 22-24 of my habeas petition) Jessie Howland testified that he had only been to my house "one day, 'ever.'" Jessie Howland testified that that "one day, ever" was before Renee went missing.(RT 780: 12-16; 174: 2-4; 182: 12; 769: 10,11; 767: 15-19) To show conclusively that Jessie Howland was being forced to lie, just like Josh Burroughs was, see and compare; RT 144: 10-28 and RT 187:7-23. Jessie Howlands OWN MOTHER testified that she believed her son to be a "habitual liar." (CT: 906)

As to paragraph 5. The Respondent stated that "Josh knew [me]." This is absolutely not true. It was only after the police told Josh Burroughs who I was and showed him a picture of me that this kid was able to identify me. (RT 1037: 23-28; 1038: 1-28; 1039: 1-28; 1040: 1-4) The TRUE FACT is is that I had never seen Josh Burroughs in my life until the day he walked through the courtroom doors to testify at my prelimanary hearing. (RT 1615: 14-22) Josh himself confessed that he didn't even know what I looked like until police showed him a picture of me. (CT 392: 22-26)

As to paragraph 6. The Respondent states that it was around Memorial Day, 2000, that "this party" took place. Renee's "time of death" cannot have occured on Memorial Day according to expert testimony. Josh Burroughs also stated that Renee "was dazed" after the first blow and then "she fell" after the second blow. Then Josh Burroughs said that me, Jake Silva, and Ray Goans each had sex with Renee while she was passed out. Josh said he knew that Renee was waking up because she started "yawning." (See final video interview by the police, Exhibit 65a; also Clerk's Transcript of that video, CT 1046)

As to paragraph 7. The Respondent states that it was "at the Home Depot where [Renee] was killed." However, Detective Joe Morgon who

(5)

was the original lead detective for the Manteca Police Department in this case and later became number two in charge testified that he "still don't" know where Renee was murdered. This testimony was recorded 15 months after I was arrested during mine and Jake Silva's prelimanary hearing. (CT 547: 17-22) The Respondent also states that "Josh was able to lead detectives to a point about three feet from where the body had been found without any influence from the detectives. This too is completely inaccurate. Josh testified that he "learned everything...from watching television, from hearing rumors from people, AND FROM WHAT THE POLICE TOLD HIM." (RT 731: 10-22) Aside from getting his information from the television and from the Manteca rumor mill, Josh pointed to the prosecutor and Manteca Police Detective Ken Wells from the witness stand and said, "[AND] PARTLY FROM THEM RIGHT THERE." (RT 615: 2) Josh Burroughs knew about where the spot was where Renee was found because "that was the 'ONLY' one I saw when they took me there," said Josh Burroughs. (CT 322: 18) Although Josh Burroughs was a suspect still at this point--the trip over to the Home Depot Store with the detectives WAS NOT VIDEO TAPED along with the police interrogation of Josh Burroughs which 'immediately' preceded the trip over to the Home Depot Store. (See police video interrogation of Josh Burroughs, September 07,2000.) Contrary to the Respondent's claim that Josh Burroughs was able to decribe how the area looked and the state of Renee Ramos' clothes when her body was discovered, Josh Burroughs DID NOT describe any of Renee's clothes correctly even when shown the actual shirt she was wearing by the prosecutor while up on the witness stand. (RT 542: 28; 543: 1-4) Josh Burroughs described Renee's pants as being "unbuttoned" (RT 621: 19-28) when in reality, Renee's pants LACED UP LIKE A SHOELACE IN THE FRONT. (RT 584: 18-28; 585: 1,2) The police supplied the fact that Renee's shirt was around her neck so Josh Burroughs just simply agreed. (RT 572,573)

(6)

As to paragraph 8. The Respondent states that "Josh asked to go to Renee's grave." After staring at the grave for a moment, Josh began to describe what happened at the "Home Depot Party." This is completely false. It was only after pressuring Josh Burroughs while at Renee's grave side that Josh Burroughs continued his story telling. (CT 375: 20-24; 376: 1-3, 21-27) (RT 648: 20-28; 649: 1-16) The Respondent also states that Jake Silva, myself, and Ray Goans had sexual intercourse with Renee Ramos. However, as pointed out on page '9 of my habeas petition the Pathologist, Dr. Cooper, who performed an autopsy on Renee Ramos on the day after her body was discovered, testified, "That there was 'NO EVIDENCE' OF ANY SEXUAL CONTACT AT ALL IN CLOSE RELATION TO MS. RAMOS' DEATH." (CT 270: 18-20) It was Renee's necklesses that she was strangled with-not her bra-as already shown above on page 3.

As to paragraph 9. The Respondent states that Renee had only one beer at "the party." This one beer was a 32oz beer according to Josh's statement to police. As already brought out above on page 4, the Respondent states herself that "there were no signs of alcohol or any other drug in [Renee] Ramos' system." (RT 550: 12-19) Josh Burroughs denied-over and over and over again-that he ever saw anyone strangle Renee Ramos. (See Josh Burroughs' testimony in the Clerk's Transcripts and the Reporter's Transcripts.)

As to paragraph 10. The Respondent explaines Josh's plethora of inconsistencies because "he was afraid of bad consequences if he sniched." Josh Burrough's was refering to "his friends" whom he was arrested with for car theft. (RT 605: 25-28; 606: 1,2; 568: 18-28; 569: 1-10) Josh WAS NOT worried about the "bad consequences" of any Home Depot murder suspect. HE WAS WORRIED ABOUT THE 'BAD CONSEQUENCES' OF SNITCHING OFF HIS OWN FRIENDS WHOM HE WAS ARRESTED WITH FOR CAR THEFT. The Respondent also stated that I threatened Josh Burroughs by saying to him: "Your going down punk." This is again, completely false. I called Josh a "FUCKING LYING PUNK." The

(7)

prosecutor's own immediate report of this incident to the judge when he re-entered the courtroom confirms that I DID NOT THREATEN JOSH BURROUGHS. (CT 291: 13-23) The prosecutor's "REPORT" of the incident also shows, too, that Judge Harrington lied when he said, "I heard that, Mr. Wright. I heard [Ty Lopes] say it." (Sentencing hearing, RT 1596: 25,26) I tried in vain to tell the judge during my statement just minutes before I was sentenced that I did not threaten Josh Burroughs and that he (the Judge) was not in the courtroom when I called Josh a "fucking, lying punk." (RT 1621: 6-27) Josh Burroughs was forced into twisting the words: "fucking, lying punk," into the words: "your going down punk." My attorney hit the nail right on the head when he said, "I THINK THAT IS A TYPICAL EXAMPLE OF WHAT'S BEEN HAPPENING IN THIS CASE." (RT 144: 27,28) Misusing his power, Judge Harrington looked at me and said, "The record as to what was said in trial stands for itself -- stands for what the record is. I'm not going to debate with you what the record says, Mr. Lopes." (RT 1622: 1-3) I called Josh Burroughs a "fucking, lying punk," BECAUSE THAT IS WHAT HE IS! Josh Burroughs' OWN SCHOOL TEACHER strongly confirms me. (CT 811: 11-26)

As to paragraph 11. I agree with what the Respondent states regarding what was concluded by the psychologist, as well as what degree of the crime of perjury -- Josh thought it was a misdemeaner. However, the Respondent left out the fact that Judge Harrington said, "I don't mind somewhere using the word "perjury" because there's 'NO QUESTION IN MY MIND' that Josh Burroughs committed perjury." (RT 1116: 19-21) Please,now turn to ground eleven of my habeas petition.(P.34)

As to paragraphs 12-15. The true facts completely impeach Marcus Hopkins. The Respondent states that I was holding Renee down while Jake Silva had sex with her. This is again completely false. (RT 859: 1-16) Hopkins told the police that I told him all about what happened to Renee out on the jail yard. Hopkins claimed that we both had the same job working out on the yard.(RT 842: 1-28; 843: 1-24) My attorney then asked

(8)

Hopkins if he remembered being asked about this at my prelimanary hearing. Hopkins Responded, "uh - huh." My attorney then asked Hopkins if he remembered what his response was. Hopkins said, "No. What was my response?" At my prelimanary hearing Marcus Hopkins answered, "I guess I bit my tongue on that one." (CT 462: 22,23) Hopkins also claimed that I told him that police would find semem "ALL OVER" Renee's clothes and body. (RT 859: 28; 860: 1-11) My attorney then appropriately said, "I don't have anything further." (12) Hopkins had several felony counts against him dismissed in exchange for his "testimony." He also provided "testimony" in two other special circumstance cases as well.

As to paragraphs 16-18. Charlie Cooper is a complete liar too. He claimed that I said that I went to the Home Depot to "pull a train" on Renee Ramos. As already shown in my petition: "There was 'no evidence' of any sexual contact at all in close relation to Renee Ramos' death." (CT 270: 18-20) My Trial Judge also deleted the lesser included offense of attempted rape that he mentioned in his ruling on my 1118.1 motion for acquittal on the rape charge. He did so on the very next day. (RT 1107: 12,13) The Respondent also states that I told Charlie Cooper that "things got out of hand when Renee started holloring that she was going to call the cops." However, my Trial Judge made himself very clear on this issue when he said, "NO, I'M NOT BUYING THAT ONE." (RT 1129: 3-5) Cooper also claimed that the murder took place over the Memorial Day Weekend. This is totally impossible according to expert testimony. Lastly, Cooper was in custody at the time of his "testimony" against me. My attorney asked Cooper what it meant to be in a red Jail Jump suit. Cooper answered, "It means it ain't blue." (RT 911: 1-4) My attorney then asked, "Means alittle more that that, doesn't it?" Cooper answered, "Pardon me?" My attorney asked, "It means alittle more than that?". Cooper said, "Murder." My attorney then asked, "Or protective

(9)

custody?" Cooper answered, "Or both." My attorney then asked Cooper this question: "Which one is it for you?" Charlie Cooper answered, "IT SHOULD BE BOTH." (RT 911: 5-12) The Respondent also stated that "rags" were put into Renee's mouth. There was no evidence that rags were put into Renee's mouth. There was no cloth fiber--no nothing. I agree with what is said in paragraph 18 of the Respondent's Points And Authorities. (See also AOB pp. 32-36. This brief was submitted as a seperate memorandum to my habeas petition)

As to paragraph 19. The Respondent states that Jessie Howland was called to provide "propensity" evidence against me. This is totally false as I have shown on pages 22-24 of my habeas petition.

As to paragraph 20. Prop 115 testimony by Detective Tony Souza of the Manteca Police Department who was the LEAD DETECTIVE in this case testified for Jessie Howland at my prelimanary hearing. Detective Souza's testimony as to what Jessie Howland would testify too shows conclusively that Jake Silva and I were NOT TOGETHER AT ANY TIME on the 1st, 2nd, and half of the 3rd of June,2000. (CT 620: 8—636: 8) The other half of the 3rd of June,2000 and the 4th of June could not be a time of death for Renee Ramos because, as I have already shown, live maggots were found in Renee's mouth and her vagina and the expert testified that it takes 48 HOURS after a body is visited by flies for maggots to hatch. (RT 367: 26-28) Renee Ramos' body was found on June 05,2000, by a construction worker "IN THE MORNING." Therefore,June,04, 2000, cannot be a possible time of death at a "Home Depot Party" that the police claimed occured at night. The evening of June 03,2000, cannot be a possible time of death either.

Before the Pathologist changed Renee's time of death to only include June 2nd, 3rd, or 4th at my actual trial, he testified at my prelimanary hearing that Renee Could have died up to 5 days before

(10)

her body was discovered on the morning of June 05,2000. This would make
the earliest time of death, May 31,2000. As shown already, Renee went
missing on the morning of May 29,2000, which was Memorial Day. If this
may 31,2000 time of death were true, then this would still leave Renee
Ramos totally unaccounted for for well over two full days. Moreover,
MAY 31,2000,WAS THE DAY THAT JAKE SILVA DID IN FACT GET A "MOHAWK"
HAIRCUT AT PK'S HAIR STYLING IN MANTECA. (CT 617: 11-28; 618: 1-15)
The Manteca Police Detectives NEVER ONCE asked Josh Burroughs about
Jake Silva's hair style which would have stuck out like a sore thumb at
"the party." Josh Burroughs never once said anything about Jake Silva
having a MOHAWK, much less a "BURGANDY" colored one. (CT 618: 16-18; RT
1344, 1349, 1350)

The prosecutor repeatedly stated that it was "AFTER" Renee went
missing when Jessie Howland and Jake Silva were in my bedroom with an
underage girl. The prosecutor insisted that this was on June 01 and
into the early morning hours of June 02,2000. (RT 169: 12-19; CT 620: 8,
9; 627: 18-26; 628: 13-15) The prosecutor even went as far as to
pronounce Renee Ramos dead already at this point. (RT 42: 28; 43: 1-5)
My attorney even told the prosecutor who the young "woman" was and
told him that we had her phone number as well. The prosecutor then
exclaimed, "We are interested to know who she is!" (RT 192: 24,25)
There is absolutely no evidence or discovery that was turned over to
me that would even suggest that the prosecutor or the Manteca Police
Detectives even attempted to go and talk to 18 YEAR-OLD, AMANDA. That's
because, as I have already shown on pages 22-25 of my habeas petition,
the actual date that Jessie Howland and Jake Silva were in my bedroom
was FABRICATED. Jessie Howland finally testified that it "WAS LIKE A

MONTH AGO." (RT 780: 12) "OH, ABOUT A MONTH BEFORE," asked the prosecutor. Jessie Howland answered, "YEAH." (RT 780: 13,14) Jessie Howland made it completely clear when he testified, "NO, NOT THE SAME DAY AS THE HAIR COLOR." (RT 769: 10,11) Jessie Howland was clearly refering to June 01,2000, the day he was with Jake Silva when Jake GOT HIS "MOHAWK" COLORED, BURGANDY.(CT 618: 16-22) The prosecutor deliberately and maliciously withheld the discovery that ' went with the ATM burglary case that was pending against me long before Renee even went missing and this act by the prosecutor was "the key" that enabled the prosecutor to put me and Jake Silva together "after" Renee Ramos went missing. (See ground 5 of my habeas petition, pp. 22-25) As already shown the prosecutor WAS 'ONLY' CONCERNED ABOUT PUTTING JAKE SILVA AND I TOGETHER, 'NOT' ANY SO-CALLED PROPENSITY ACTS BY ME! (RT 1422: 7-15; 1454: 16-22) Jessie Howlands conscience finally got to him Just like Josh Burroughs' conscience finally got to him. (See Josh's conscience ACTUALLY WORKING: RT 598: 24-26; 675: 27,28; 619: 16; 602: 1-9; 716: 13,14)

When it was brought to Josh Burroughs' attention that we all knew that he couldn't have been at the Home Depot--at "a party"--because he told the police that his mom had picked him up after "the party" in her VW Bug "THAT SHE HAD SOLD PRIOR TO MAY,2000 ," Josh Burroughs responded: "THAT SHOULD BE THE END RIGHT THERE." (RT 678: 3) I would certantly agree with Josh Burroughs there.

Josh Burroughs also told the police that "someone brought the keys" to the Home Depot Store and let us all in. (RT 617: 21-28; 618: 1-5) THERE WERE NO DOORS ON THE HOME DEPOT STORE YET! Josh Burroughs would have NEVER made such a statement had he really been to the Home Depot Store in May or June of 2000.

(12)

I would respectfully submit that my intrinsic challenge of the
"facts" as they have been presented in the State Appellate Courts
Opinion--ARE IN MASSIVE ERROR. I respectfully submit that I have
shown so by "CLEAR AND CONVINCING PROOF" using the word for word
record in this case.

I respectfully request that the "Statement of Facts" that the
Respondent relied on for her Memorandum Of Points And Authorities,in
the Answer, be overturned.

I would also request that this court exercise extra power and
overturn the Home Depot "party" story that was used against Jake
Silva as well.

I also desperately request that this court launch an F.B.I.
PROBE into the Manteca Police Departments actions as well as the San
Joaquin County Prosecutor's actions. THEY ARE FRAMING UNSUSPECTING
CITIZENS FOR MAJOR CRIMES THAT THEY THEMSELVES ARE TOO INCOMPETENT
TO SOLVE ON THEIR OWN, JUST SO THEY CAN SAY THAT THEY "SOLVED THE
CRIME!"


I will now reply to the Respondent's Arguement portion of the Answer.
(Please turn to the next page)

I.

I WAS ILLEGALLY CHARGED IN THE INFORMATION
WITH RAPE AND SPECIAL CIRCUMSTANCE
FOLLOWING MY PRELIMANARY HEARING WHICH
VIOLATED MY U.S. CONSTITUTIONAL RIGHT TO
DUE PROCESS OF LAW *

The Respondent basis her arguement on the superior court's order
(REASON) on habeas review because "the superior court found that the
magistrates ruling 'only' considered whether sufficient evidence
supported probable cause on the charges and did not preclude the re-
filing of the rape charge and the special circumstance enhancement
because the magistrate did not make factual findings."

The Respondent also argues that because I had not cited any
clearly established federal law that supports my claim in ground 1 of
my habeas petition--the Respondent feels that this court should deny
my claim for relief.

The Respondent also mentioned that "at the end of the prelimanary
hearing, the magistrate advised that a finding in a prelimanary hearing
is not the same as reasonable doubt, and the court is required to find
sufficient cause, which is probable cause." The magistrate here was
simply letting everyone know in the audience that the standard by
which he was ruling was not the same as at trial. (CT 847: 10-20)

* The Respondent has merged grounds 1 and 2 of my habeas petition
together in the answer even though I argued them seperately.
Therefore, I will again argue the two grounds seperately.

(14)

The Respondent also insinuates in her arguement that the magistrates FACTUAL FINDINGS as to the rape and the special 'circumstance charges filed against me in the complaint were not express factual findings.

After the last witness testified at the prelimanary hearing and after all arguement was finished, the magistrate asked the prosecutor this question: "AS TO MR. LOPES AND THE FINDING OF SPECIAL CIRCUMSTANCES, WHAT 'EVIDENCE' ARE YOU RELYING ON FOR THAT?" (CT 843: 2-4) The prosecutor answered this way: "WELL, I'M RELYING ON HIS ADMISSIONS TO MR. HOPKINS UNDER -- MR. HOPKINS WHERE HE WAS SAYING HE HELD HER DOWN, WAS THERE, CLEANED UP AFTERWORDS. IF NOTHING ELSE, HE MAY BE AN ACCESSORY." (CT 843: 5-9) The prosecutor finished his answer by asking the magistrate to hold me to answer, "EITHER AS AN ACCESSORY OR A DIRECT PARTICIPANT." (CT 843: 23,24) The magistrate found me to be neither.

After a hour or so recess the matter came back onto the record. The first statement the magistrate made was this: "I DO APPRECIATE EVERYONE'S PATIENCE, AND I'M GOING TO BE READING FROM SOME NOTES BECAUSE 'I DON'T WANT TO LEAVE SOMETHING OUT.'" (CT 844: 3-5) The magistrate said this because he wanted to make sure that he did not leave anything out of his EXPRESS FACTUAL FINDINGS as to the rape and the special circumstance charges against me. The magistrate findings were based on what the magistrate "believed" the evidence showed, not on the credibility of the "witnesses." (CT 843: 2-4; 845: 8-11)

For the Respondent to argue that no express factual findings were made is massively unreasonable and defies common sense. For the superior court on habeas review to do the same is nothing short of a "gross" misrepresentation of the FACTS in the word for word record.

(15)

The Respondent argues that I did not cite any clearly established federal case law to support my claim here. I would respectfully submit that the Respondent has cited the appropriate clearly established federal case law for me in her answer regarding "intrinsic challenge" of the state-courts findings of fact. (Answer, p. 5:24-28) An information may charge "ONLY" an offense found by the magistrate to have occured and named in the order of committment or an offense shown by the evidence to have occured that arose out of the transaction that was the basis for the committment on the related offense. (Martineau v. Angelone (9th Cir. 1994) 25 F 3d 734.) The Respondent herself stated in her answer that the prosecutor "...MAY NOT IGNORE THE MAGISTRATE'S FACTUAL FINDINGS." (Answer, p. 9: 13-15) This is exactly what the prosecutor did in this case. He ignored the magistrate's express factual findings and he illegally re-filed the rape and the special circumstance charges in the information. As brought out in my petition the magistrate knew that he had barred the prosecutor from re-filing these charges, yet he did absolutely nothing to stop the prosecutor from breaking the law. Instead, the magistrate left it up to my attorney to stop the prosecutor. My attorney completely failed me as well. Perhaps it had something to do with the "BRAIN TUMOR" my attorney died from Just shortly after I was wrongfully convicted?

I RESPECTFULLY REQUEST AN EVIDENTIARY HEARING.

Contrary to the Respondent's statement that "A claim cannot be made under the Double Jeopardy Clause because double Jeopardy does not attach...until the Jury is empaneled and sworn," THE TWO CHARGES WERE 'FATALLY' STRUCK DOWN. The magistrate factually found me to be "ONLY" an accessory "AFTER THE FACT" to what he believed that Jake Silva did.

(16)

As shown on page 6 of my habeas petition the magistrate was totally correct in ruling, "I DO NOT BELIEVE THAT THAT WILL MAKE HIM LIABLE UNDER SPECIAL CIRCUMSTANCES ON 190.2(A)." (CT 846: 7-24; 747: 1-7)

I respectfully request that this court reverse my entire conviction and dismiss the rape and the special circumstance charges, and order that these two charges will never be allowed to be charged against me ever again. The Respondent did not even attempt to argue the actual FACTS of the record.

THE 995 HEARING THAT FOLLOWED MY PRELIMANARY HEARING
WAS ILLEGALLY FORCED AND THE RULING BY THE 995 JUDGE
AT THE END OF THE HEARING WAS ERRONEOUS BECAUSE THE
JUDGE SUBSTITUTED THE WEIGHT AND THE SUFFICIENCY OF
THE EVIDENCE FOR THAT OF THE MAGISTRATE, VIOLATING
MY U.S. CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW

As stated on page 8 of the Respondent's Answer at lines 18-24,
on November 5,2001, the district attorney re-filed the rape and the
special circumstance charges against me following my prelimanary
hearing. On December 17,2001, the 995 Court (Judge Hammerstone)
denied my motion. The 995 Judge made the statement that the
magistrate made no factual findings as to the credibility of the
"witnesses."

The 995 hearing was illegally forced because the prosecutor was
BARRED from re-filing the rape and the special circumstance charges
in the information 'in the first place.'

At my prelimanary hearing the magistrate's ruling--as to me--was
based on what the magistrate believed the evidence showed. The
magistrate did not need to rule on the credibility of the witnesses.
I would respectfully submit that there is more that one way for a
magistrate to FATALLY strike down a charge or charges when ruling at
a prelimanary hearing. In this case the court must keep in mind that
there were two defendents at the prelimanary hearing, not just one.
Moreover, as shown in my petition (p. 9-11) the 995 Judge ruled that
because he did not see the witnesses testify for himself, he ruled
that that left him "IN NO POSITION" but to deny my motion pursuant to
Penal Code Section 995. (ART 64: 12-18)

The superior Court's ruling (REASON) on habeas review is in

mammoth error. The 995 hearing was illegally forced and the 995 Judge clearly substituted the weight and the sufficiency of the evidence for that of the magistrate.

I, again, respectfully request that this court reverse my entire conviction and dismiss the rape and the special circumstance charges, and that this court order that these two charges will never be allowed to be charged against me ever again. Again, the Respondent did not even attempt to argue against the FACTS as I have presented them in my habeas petition.

> I WAS ILLEGALLY DENIED AN ACQUITTAL ON THE RAPE
> CHARGE AND THE SPECIAL CIRCUMSTANCE CHARGE
> AFTER THE CLOSE OF THE PEOPLES CASE IN CHIEF
> WHICH VIOLATED MY U.S. CONSTITUTIONAL RIGHT TO
> DUE PROCESS OF LAW UNDER PENAL CODE SECTION
> 1118.1. *

The Respondent states in her arguement that the issues that I have shown in grounds 3 and 4 of my petition "APPEAR TO CENTER AROUND MY ARGUEMENTS THAT THE INCONSISTENCIES IN THE TESTIMONIES OF JOSH AND THE TWO JAILHOUSE INFORMANTS RENDERED THE EVIDENCE INHERENTLY INCREDIBLE." (Answer, p. 10: 7-9) This is absolutely false!

My arguement in ground 3 and 4 are based on the trial courts "LEGAL ERRORS." I respectfully submit that this fact cannot have been made any clearer. (See Grounds 3 and 4 of my petition)

The same Judge who conducted my preliminanary hearing also was my trial Judge. When I asked for an acquittal on the rape charge at the end of the prosecutor's case in chief, the Judge ruled that "THE EVIDENCE IS INSUFFICIENT TO ESTABLISH THE COMMISSION OF THE CRIME (RAPE) SPECIFICALLY CHARGED IN THE ACCUSATORY PLEADING." (RT 1050: 21-24) The Judge denied my acquittal motion because of the possibility that a lesser included offense might be shown by the evidence. One of the lesser included offenses was, "attempted rape." However, on the very next day during Jury instruction discussions,(I was not present) the Judge deleted the above lesser included offense. (RT 1107: 12,13) As clearly established federal law shows, the language of Penal Code

* The Respondent has again merged the grounds together even though I argued them seperately, specifically, grounds 3,4, and 8. I will again argue them seperately in the Traverse.

Section 1118.1 does not permit of an interpretation that gives trial Judges a discretion to refuse to order a Judgement of acquittal in the face of insufficiency of the evidence on the specific charge in the accusatory pleading. The Judgement of acquittal is MANDATORY. The same mandatory language -- "shall" -- is used in Penal Code Section 1118.1 is as found in rule 29(a) of the FEDERAL RULES OF CRIMINAL PROCEDURE. There is no valid reason why Penal Code Section 1118.1 should be given an interpretation different from that given the same mandatory language found in Rule 29(a) of the Federal Rules of Criminal Procedure.

This law is so strict that even if I had not asked for a Judgement of acquittal on the rape charge at the close of the peoples case in chief, the trial Judge was still under mandatory duty to acquit me on that charge and the special circumstance charge.

In this case the Judge ruled from the beginning -- all the way from the primanary hearing -- that I did not rape anyone. In fact, "There was no evidence 'OF ANY' sexual contact 'AT ALL' in close relation to Renee Ramos' death," testified the expert. (CT 270: 18-20)

My Trial Judge clearly ruled that the evidence is insufficient to establish the commission of the crime of rape filed against me. (Please refer to ground 3 of my habeas petition.)

I respectfully request that this court order the superior court to acquit me on the rape and the special circumstance charges immediately.

I am entitled by the same laws above to an acquittal on the murder charge as well. That issue will be shown next.

(21)

THE TRIAL COURT LEGALLY ERRED WHEN IT DENIED
MY MOTION FOR ACQUITTAL ON THE MURDER CHARGE
AFTER THE PEOPLES CASE IN CHIEF WHICH
VIOLATED MY U.S. CONSTITUTIONAL RIGHT TO
DUE PROCESS OF LAW UNDER PENAL CODE SECTION
1118.1.

Immediately after the Judge denied my motion for acquittal on the
rape charge I asked for an acquittal on the murder charge as well. (RT
1051: 11-14) The Judge then asked the prosecutor for a response. The
prosecutor, as shown in my petition, relied on the "SAME EVIDENCE"
that the Judge just ruled was insufficient as to the rape charge. (RT
1051: 15-19) The Judge immediately denied my acquittal motion on the
murder.(20) The Judges reason for denying my motion for acquittal on
the murder charge is horribly inadequate.

But even more significent is what the Judge whole heartedly agreed
to on the very next day during Jury instruction discussions.

As shown in my petition, when the Judge got to instruction 270, my
attorney objected to that one. (RT 1086: 10,11) The prosecutor wanted
my Jury to believe that I confessed to raping Renee Ramos to Charlie
Cooper. The prosecutor wanted everyone to believe that Charlie Coopers
"testimony" also proves that I murdered Renee to avoid detection on the
rape as well. The Judge said, "NO, I'M NOT BUYING THAT ONE." (RT 1129:
3-5)

After more courtroom discussion on instruction 270 the Judge said,
"Let me read the legal parts of 270." After the Judge read the legal
parts of 270 my attorney said, "We don't have that." (RT 1087: 5) As I
have already shown on pages 16 and 17 of my habeas petition, the Judge
whole heartedly agreed with my attorney when he told the Judge that
there was "NO EVIDENCE THAT I WAS THERE EVEN" at the Home Depot Store.

( 22)

The Judge said, "I KNOW THAT." (RT 1087: 6-19) The Judge said that less than 24 hours after he denied my motions for acquittal on all charges.

Penal Code Section 1118.1 would have protected me and Jake Silva had the Judge not neglected his DUTY to protect the innocent.

In this case, the Judge terribly neglected his duty to apply the safegaurds that would have prevented me -- A FACTUALLY INNOCENT MAN -- from being torn away from my family for crimes that I can't even imagine committing. (RT 1613: 13--1620: 2; 1620: 21--1621: 27)

As shown in my previous arguement the Judge was under mandatory duty to acquit me on the rape and the special circumstance charges and he was under the same mandatory duty to acquit me on the murder charge too.

I respectfully request that this court order the superior court to follow through on its duty and acquit me on all counts.

THE "EVIDENCE" WAS INSUFFICIENT TO SUPPORT MY
MY CONVICTION, DEPRIVING ME OF MY U.S.
CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW.

The FACTS are argued in my Memorandum Of Points And Authorities
on pages 3-12 of my Traverse here. Please also refer to my Opening
Brief on Direct Appeal, case number C041516, Third Appellate District.

According to expert testimony Renee Ramos was not strangled by
her bra. The evidence clearly shows that Renee was strangled from
behind by her necklesses. (RT 398: 9-20; CT 278: 15,16)

Not only is the evidence insufficient to support my conviction--
THE EVIDENCE ACTUALLY PROVES THAT SOMEBODY ELSE COMMITTED THE CRIME!
A stipulation as to what the DNA EXPERT would testify too was read to
my Jury. In connection with this case the DNA EXPERT received several
items of evidence which were seized by the Manteca Police Department.
The expert also received blood reference samples from (7) SEVEN
SUSPECTS to compare against DNA (THE DNA THAT REALLY MATTERS IN THIS
CASE) "FOUND IN OR ON THE 'FINGERNAIL' CLIPPINGS OF RENEE RAMOS." (RT
512: 14-23; 513: 3,4) As this court can see I was excluded as the
possible donor of this DNA found under Renee's fingernails. SO WAS
JAKE SILVA AND RAY GOANS. In fact, NOBODY who has ever been a suspect
in this case was the donor of the DNA found under her nails.

It is impossible to believe that Renee Ramos did not try to stop
her killer from stragling her. In fact, the prosecutor himself told
this to my Jury during his closing statement: "This is the
strangulation marks on Peoples 54 and Peoples 41. Do you think this is
any sort of consent? Do you think that she wanted this stuff to
happen to her? DO YOU THINK SHE DIDN'T FIGHT?" (RT 1430: 24-27) I

(24)

would respectfully submit that ofcourse Renee fought to try to save herself and while doing so, SHE COLLECTED HER KILLERS DNA 'UNDER HER FINGERNAILS.' The Manteca Police have got the wrong people in prison!

The Respondent also refers to the OLD SPERM STAIN from Renee's "boyfriend," Jake Silva,that was in the "CROTCH" of Renee's underwear. (RT 512: 22,23) If this court would look at the entire story that the Manteca Police "produced" through Josh Burroughs-- this court would notice that during the ENTIRE story, Renee Ramos NEVER MAKES IT BACK TO HER FEET. It is impossible that the sperm stain in which the DNA EXPERT testified that "NOBODY COULD DETERMINE HOW LONG THE DNA FROM THE SPERM HAD BEEN DEPOSITED ON RENEE RAMOS' UNDERWEAR," had anything to do with her murder, because Renee Ramos never makes it to her feet according to Josh Burroughs. Gravity would have pulled any semen flowing from Renee's vagina downward into the crack of her butt. It would have been on her skin. (RT 513: 9,10) The DNA EXPERT and or the Pathologist would have easiely been able to determine that the sperm from her boyfriend had been deposited there very recently had that sperm had anything to do with the horrible crimes committed against Renee Ramos.

My Trial Judge who is an experienced fact finder ruled that the evidence was insufficient that I committed rape. The Judge even went as far as to whole heartedly agree with my attorney that there was "NO EVIDENCE THAT I WAS EVEN THERE AT THE HOME DEPOT STORE." (RT 1050: 21-24; 1087: 17-19)

The Respondent completely ignored grounds 3 and 4 of my habeas petition. In effect, she has conceded the issues, and rightfully so.

The Respondent also refers to Josh Burroughs being able to describe the state of Renee's clothing and his ability to lead the

(25)

detectives to the spot where Renee was found. This is all completely FALSE!

As I have already shown in my points and authorities Josh Burroughs couldn't even identify the shirt Renee was wearing, even when the prosecutor showed it to him while up on the witness stand. (RT 542: 28; 543: 1-4) Josh Burroughs also said that Renee's pants were "unbuttoned" when the true fact is is that RENEE'S PANTS LACED UP LIKE A SHOELACE IN THE FRONT. (RT 621: 19-28; 584: 18-28; 585: 1,2) Josh repeatedely testified that Renee was "beaten,hit, and slapped."Josh even went as far as to say that Renee was beaten to the point of unconsciousness. However, the Pathologist, Dr. Cooper testified that, "NO, I DIDN'T SEE ANY EVIDENCE OF THAT." (CT 279: 12-15) The police supplied the fact that Renee's shirt was half way off up around her neck, so Josh just simply agreed. (RT 572, 573)

Josh pointed to a spot in the Home Depot close to where Renee was found because "THAT WAS THE ONLY ONE I SAW WHEN THEY TOOK ME THERE." (CT 322: 18; RT 731: 10-22) The Respondent repeatedly stated that Josh's story was "consistent with the autopsy findings." As shown, that is completely false. Moreover, the trip over to the Home Depot Store was part of an interrogation of Josh Burrough's by police. It was not video taped. (Interrogation video, September 07,2000) U.S. Law forbids the police from interrogating any suspect in a murder case without video-taping the entire interrogation. This lie by the police was a huge part of their scheme to frame Jake Silva and I for Renee's murder.

Again, Judge Harrington agreed himself that there was "NO EVIDENCE" that I was even there at the Home Depot Store and Judge Harrington was the judge from the very beginning. (RT 1087: 6-19)

I respectfully request immediate relief. (Please refer to my Opening Brief on Direct Appeal, pp. 13-37)

(26)

THE PROSECUTOR DELIBERATELY AND MALICIOUSLY
WITHHELD AND HID CRUCIAL EXCULPATORY
DISCOVERY FROM ME WHICH VIOLATED MY U.S.
CONSTITUTIONAL RIGHT TO A FAIR TRIAL.

The Respondent basis her entire arguement on only the discovery
related issues regarding Josh Burrpughs, Jessie howland, and Charlie
Cooper. The Respondent did not argue against one word I said in my
habeas petition regarding MANTECA POLICE OFFICER, DANNY RAY ERB AND
HIS BACKPACK AND SHOES DECEPTION. (See habeas petition, pp. 25-27)

As already shown in my habeas petition(p.19 ) Josh Burroughs
testified that he told the detectives the truth when they came to his
house to serve him a subpoena "two weeks ago." Josh testified over and
over again that "EVERYTHING" that he had ever told the police before
"two weeks ago" was a lie. (CT 317: 23,24,26,27,28; 318: 1; 348: 25-28;
349: 1-10; 362: 15,16; 363: 25; 365: 19,20)

The Respondent then argued that I was afforded the opportunity to
"extensively" cross exam Josh about his statement at the prelimanary
hearing. This is absolutely false. (Answer, p. 14)

The very moment my attorney exclaimed that we had no Report of the
exculpatory statement Josh Burroughs made to police "two weeks ago" the
Judge immediately barred me from talking about this any further. The
Judge ruled: "WERE NOT GOING TO GET INTO THAT." (CT 318: 3)

The Respondent also cited several transcript pages for this court to
read—NONE OF WHICH HAVE ANYTHING TO DO WITH THE STATEMENT JOSH MADE TO
THE POLICE TWO WEEKS BEFORE MY PRELIMANARY HEARING. (Answer, p. 14)

The truth of this matter is is that the prosecutor NEVER turned over

ANYTHING to me regarding Josh Burroughs' exculpatory statement to the police detectives when they came to his house to serve him a subpoena. , As I have already shown, the prosecutor barely got a holding order against me at the preliminary hearing. The statement Josh Burroughs made to the police detectives "TWO WEEKS AGO" may very well have been the evidence that I needed which would have forced the prosecutor to dismiss the entire case against me. The police failed to tell the prosecutor about Josh's statement with the intention of me never learning of it. However, as I have shown in the law that I cited in my habeas petition on page 29--it doesn't matter. "THE PROSECUTOR HAS A DUTY TO LEARN OF ANY FAVORABLE EVIDENCE KNOW TO OTHERS ACTING ON THE GOVERNMENTS BEHALF, INCLUDING THE POLICE."

As to the Jessie Howland scheme. The Respondent states that I have not shown that there was any material evidence that the prosecutor supressed. The Respondent states that I made no connection between the ATM burglarey charges and the "propensity" lie.

I respectfully submit that the prosecutor was caught by his own mouth in this scheme. (Habeas petition, PP. 22-25) The Judge also attempted to assist the prosecutor in covering up this falsity, more than once. (RT 192: 28; 49: 20-26)

As shown by Jessie Howlans own testimony,it was "LIKE A MONTH AGO" when he and Jake Silva were in my bedroom with 18-YEAR-OLD, AMANDA. Absolutely no sexual assault took place what-so-ever. The prosecutor deliberately and maliciously changed the actual date that Jake Silva and I were together so he could put me and Jake Silva together "after" Renee Went missing. Proof positive because the prosecutor did not even attempt to go and talk to Amanda even after I told him who she was and told him I had her phone number. (191: 24-28; 192: 1-25) THE PROSECUTOR WAS NOT INTERESTED IN KNOWING WHO AMANDA WAS. HE WAS 'ONLY' INTERESTED

(28)

IN PUTTING JAKE SILVA AND I TOGETHER DURING THE WEEK RENEE RAMOS WENT MISSING. (RT 1422: 7-15; 1454: 16-22) The prosecutor was caught in this fabrication here by his own mouth when he was overheard confering with Manteca Police Detective, Ken Wells. (RT 49: 3-5)

As to Officer Danny Ray Erb's deceiving testimony--as I already stated, the Respondent did not answer. I would respectfully submit that the Respondent has conceded.

The FACTS are argued fully on pages 25-27 if my habeas petition. However, please note that this deceiving scheme worked so well that the Respondent on Direct Appeal used this fabrication to sum up his arguement regarding the sufficiency of the evidence ground in my Opening Brief. ( Case No. C041516, Respondent Brief, p. 29) The News Artical that shows that thousands of people knew about Renee Ramos' missing backpack and shoes is attached immediately following this arguement. Please also note that I was convicted immediately after my Jury asked for a readback of Officer Danny Ray Erb's "testimony." (CT 1353) My Jury was tricked into believing that I could not have known that there was a backpack and shoes missing from Renee Ramos and this deception was all it took for my Jury to convict me. (Compare Penry v. Johnson, 532 U.S. at 795, quoting Brecht v. Abrahamson, 507 U.S. 619,637 (1993) The attached Manteca Bulletin News Artical was of highly probative value to me and it was deliberately and maliciously suppressed by the prosecutor in order to pull off ANOTHER DECEIVING LIE in order to "win" a conviction. (Washington v. Texas 288 U.S. 14 (2006) (Berger v. U.S. 295 U.S. 78)

Finally, as to the ABSOLUTE CONTEMPT OF COURT and the intentional withholding of crucial exculpatory discovery regarding Charlie Cooper, the prosecutor should be held much more accountable for his malicious violations of my U.S. Constitutional rights.

(29)

The prosecutor flat out refused to obey the Judge and turn over everything he had regarding Charlie Cooper. The Judge found that the discovery that I repeatedly asked for was MATERIAL AND NECESSARY and the Judge even ORDERED the appearance of Charlie Cooper at my preliminary hearing. (CT 103) Interestingly, Charlie Cooper did not show up to my preliminary hearing. After lying over and over to the Judge, the prosecutor saying that he does not have the discovery that I was begging for, my attorney backed the prosecutor into a corner and the prosecutor fessed up. THE PROSECUTOR HAD THE INFORMATION I NEEDED RIGHT THERE IN THE COURTROOM IN HIS HAND! (RT 37: 17-28)

There is only one reason why the prosecutor waited until he was backed into a corner before giving me the discovery that I desperately needed. It was to send my attorney and investigater on a wild-goose chase in order to devert my attention away from Josh Burroughs and Jessie Howland. The prosecutor told the Judge: "FAILING TO DISCOVER THIS STUFF, I TAKE MY CHANCES. IF A FAIR TRIAL CANNOT BE HAD, WELL, I TAKE -- THEN THAT'S THE 'DUE PROCESS VIOLATION' THAT I TAKE MY CHANCES ON BUT IT DOESN'T REQUIRE SANCTIONS." (RT 102: 11-14) When the prosecutor was ordered to subpoena Charlie Cooper to show up to my preliminary hearing the prosecutor told the Judge: "I AM NOT GOING TO SUBPOENA HIM, YOUR HONOR, AND YOU CAN'T MAKE ME." (ART 39: 12,13)

The deliberate suppression of "MATERIAL AND NECCESSARY" discovery by the prosecution when I requested it violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. (Brady v. Maryland, 373 U.S. 83 (1963) pp. 86-88)

I respectfully submit that the allegations in this arguement sufficiently charge a horrible deprivation of my U.S. Constitutional

Rights guaranteed by the Federal Constitution, and, if proven, as I respectfully submit I've done, entitles me to an immediate release from prison. (Mooney v. Holohan, 294 U.S. 103. [373 U.S. 83,87]

   I respectfully request relief.

# Manteca Bulletin

Serving the Crossroads of California since 1908 ● Vol. 42, No. 100

**Wednesday**
June 14, 2000

Sunny and Hot
High 106° Low 70°

## Today's Bulletin

**Fighting blight**
$10 million
in RDA funds
spent in city

► See Commerce, page 16

### Lottery

Fantasy 5: 10, 07, 08, 09, 36.
Daily 3: 5, 8, 4.
Daily Derby:
1st Place: 1, 260 Trust

2nd Place: 8, Gorgeous
George, 3rd Place: 10,
Solid Gold
Race time: 1:42:28

*The champs*

Spreckels
Park
settles
major
game
champs

► See sports, page 10



# Backpack may lead to killer

### Crime

**ROSE ALBANO RIBSO**
Staff Writer

Manteca police are asking the public to be on the lookout for an old, navy blue backpack and a pair of Vans sneakers.

They are items could help investigators find the killer who murdered 18-year-old Renee Ballou. The slain Manteca High junior was believed to have been carrying her backpack, with the tanned-colored straps blacked out, and wearing the size 6 black and light brown Vans when last seen before she died.

Her body was discovered early last week hidden under a pile of construction materials inside the Tidewater Bypass bank of the Spreckels unfinished park.

Police normally keep the identity of key items under wraps during a murder investigation, but in

this case they decided to depart from the norm in hopes that doing so will help flush out the person responsible for the crime.

It was "a bad decision" to make, said police spokesman Rex Osborn, noting a press conference held at the Manteca Police headquarters following the funeral services Tuesday for the slain girl.

The backpack and shoes don't have to have been found in the area that Ballou died with exact duplicates of the items that Ballou had with her the last time she was seen, they said the actual items that belonged to the victim would probably be easier to identify.

"Everything is the same. The shoe colors are in close as we can get," as the ones used by the victim, Osborn said. The items that was found "and we have

shown a different" he said.
Osborn said police are unsure these two of uncommon items would lead to the "man that only the suspect would know."

Because these items were not found with the body, and volunteers combed the area around Renee Ballou, and "walked back the miles to try to recover the shoes and the backpack," police have to assume that these have been taken or thrown away in some place, Osborn said.

Detectives were also able to put together the likeness of every car parked at Food Associates of California during the funeral services. This classify may help jog the memory that the suspect could leave elsewhere to attend the funeral services.

See CRIME, page 6



ROSE ALBANO RIBSO/The Bulletin



A close-up of
the navy blue
backpack and
pack and shoe
if Vans show
items similar
to the ones
with murder
victim Renee
Ballou after
she was last
seen alive.

# Crime

From page 1

"Always expect the unexpected," Osborn said.

He urged anyone who finds any backpack or shoes similar to the ones displayed to the media Tuesday to immediately call the police either at 911 or the Crimestoppers line, 823-INFO (4636).

"Call the police and we'll come right out," Osborn said.

There is still no suspect at this point, but "we have lots of suspects," and all have been questioned or are in the process of being questioned by investigators, ascertaining where they were at the time of the murder, he said. They are also talking to all the people who knew the victim, he added.

Investigators have talked to the boyfriend "many times, and he's always been cooperative," said Osborn.

The boyfriend submitted to a polygraph test, and Osborn said that "he was not deceptive to the questions that we asked."

He said police are also still not releasing any information about the condition of the body when it was found, except to say that the victim was "partially disrobed, but we don't know why,"

Osborn added that "a variety of different toxicology tests" including DNA testing have been conducted but would not comment about the results.

Police have likewise collected videotapes from the surveillance cameras of all stores around town that have this equipment in hopes of collecting more clues about the identity of the killer.

Although the date of death given in the funeral service program was June 5, which was the day the body was discovered, authorities still do not know the exact time Ramos died.

It is, however, believed that the victim may have been dead two to five days when her body was found.

Eleven investigators have been working on the case since last week, putting in "hundreds of hours of investigation" in search of the suspect.

"They are very confident that they're in the right direction," Osborn said.

Meanwhile, a reward of $11,000 has been offered for information leading to the arrest and conviction of the person who committed the crime. The amount includes the $1,000 offer from Crimestoppers and a $10,000 contribution from the Carole Sund/Carrington Foundation. The Home Depot Corporation also has made a commitment to contribute to the reward and is expected to announce the amount sometime this week.

MY COURT APPOINTED TRIAL ATTORNEY HORRIBLY
FAILED TO ASSIST ME PROPERLY WHICH
VIOLATED MY U.S. CONSTITUTIONAL RIGHT TO
DUE PROCESS AND A FAIR TRIAL.

As shown already my trial attorney terribly failed to assist me
at nearly every stage of the criminal proceedings in this case.

As shown on page 30 of my habeas petition my attorney (1) should
have filed a writ of mandate/prohibition following my 995 hearing
because the 995 hearing was illegally forced and the ruling by the
995 Judge was erroneous. The 995 Judge substituted the weight and the
sufficiency of the evidence for that of the magistrate, and (2) my
attorney should have discovered the ATM burglary discovery on the
burglary case that was pending against me at the time I was arrested
in this case which would have shown that THE ACTUAL DATE THAT JESSIE
HOWLAND AND JAKE SILVA WERE AT MY HOUSE TOGETHER WAS NOT ON JUNE 01, 2000.

As shown in my Points and Authorities (pp. 11,12) and in my
previous arguement of this Traverse (pp. 28,29) as well as in the
habeas petition (pp. 22-25), the prosecutor deliberately and
maliciously "HID" the discovery that I needed to prove that Jessie
Howland was a liar. I respectfully submit that I would have never
been able to show that the prosecutor is a liar had it not been for
my attorney overhearing what he told Manteca Police Detective, Ken
Wells while they were confering on what to do about "THE ATM PART."
(RT 49: 1 - 13) The burglary case that was pending at the time of my
arrest in this case was dismissed just three days after I was arrested.
It's too bad the prosecutor FORGOT ABOUT THAT! Otherwise he would have
gotten away with FALSELY PUTTING JAKE SILVA AND I TOGETHER DURING THE WEEK
RENEE RAMOS WENT MISSING.

I respectfully submit that ,contrary to the Respondent's Answer, I 'have' shown that my attorney was more that Just deficient in his performance, he was "grossly" deficient. The Court of Appeal and the Superior Court applied Strickland in a horribly unreasonable manner.

I WAS NOT with Jake Silva at any time during the week Renee Ramos went missing. In fact, I hadn't seen Jake Silva for weeks prior to the discovery of Renee Ramos' body on June 05,2000, at the Home Depot Store. The first time I had talked to him in weeks was when he came to my house looking for mental support Just a few days after he learned of his girlfriends murder. (RT 943: 10-27)

Had my attorney obtained the ATM burglary discovery that should have been turned over to him in the FIRST PLACE, the prosecutor would not have been able to tell my Jury during his closing statement how "SIGNIFICANT" it was that Jake Silva and I were together "after" Renee went missing but before her body was found. (RT 1422: 7-15; 1454: 16-22; RT 42: 28; 43: 1-5)

My attorney was also under obligation to file a writ of mandate/ prohibition following my 995 hearing. Had he done so, there is a very reasonably chance that the rape and the special circumstance charges THAT WERE ILLEGALLY FILED AGAINST ME, would have been set aside, forcing the prosecutor to dismiss the entire case against me.

My Trial Attorney died just shortly after I was wrongfully convicted from a "BRAIN TUMOR." Evidentiary hearing requested.

I respectfully request relief.

I 'WAS' INEFFECTIVELY ASSISTED BY MY COURT
APPOINTED APPELLATE ATTORNEY WHICH
VIOLATED MY U.S. CONSTITUTIONAL RIGHT TO
DUE PROCESS OF LAW AND A FAIR APPEAL.

I filed my first writ of habeas corpus in the superior court on
April 19,2005. On June 09,2005, the superior court filed its order
(REASON). My writ was denied. The Judge reasoned that the first four
grounds of the writ "COULD HAVE BEEN RAISED ON APPEAL." (See paragraph
6 of the Reason)

The Judge even said in the Reason that the four grounds in question
"WOULD BE REFLECTED IN THE TRIAL COURT RECORD."

After the "remand order" by the Court of Appeal was carried out
regarding the Trial Court's "error" in not sentencing me on the rape
charge, I appealed because the sentence was illegal. (Court of Appeal,
Case No. C047680, Third Appellate District) I respectfully request that
this court order the Respondent to file the Appellate Record in this
second appeal. It is not listed in the Respondent's "NOTICE OF LODGING
DOCUMANTS IN PAPER" in the Answer.

The same appellate attorney that I was appointed in my first appeal
(Case No. C041516) was appointed to assist me in the second appeal.

I begged her to raise the fact that I was illegally charged in the
information with rape and special circumstance following my prelimananary
hearing. She responded by letter telling me that she looked at every
possible way that it could be raised but concluded that it "could not"
have been raised in my first appeal nor could it be raised in the
second appeal. She told me that the "ONLY" way it could be raisedis in a
WRIT. My Appellate Attorney said in her letter to me that the "ONLY

(34)

PROPER PROCEDURE WAS TO FILE A WRIT OF MANDATE/PROHIBITION TO KEEP
THE DA FROM CHARGING YOU WITH RAPE AND SPECIAL CIRCUMSTANCE. THAT
DIDN'T HAPPEN. IT WAS TOO LATE TO COMPLAIN AFTER YOU WERE CONVICTED,
TOO LATER TO RAISE IT IN THE FIRST APPEAL, AND CERTANTLY TOO LATE TO
COMPLAIN IN THIS APPEAL FROM A LIMITED REMAND." My Appellate Attorney
went on to conclude her letter to me by saying, "THERE IS NOTHING YOU
CAN SAY THAT WILL TURN THIS INTO AN ARGUABLE ISSUE. PROCEDURALLY AND
LEGALLY IT CANNOT BE RAISED IN THIS APPEAL." (Again, see attached
letter immediately following this arguement)

I would respectfully submit that either the Superior Court Judge
on habeas review is wrong or my Appellate Attorney is wrong. After
further review of the law it seems that the only thing I needed to do
to preserve the issue of being illegally charged in the information.
was to file a 995 motion, which I did. (Please compare Smith v. Robbins
528 U.S. 259 (2000))

I respectfully request an evidentiary hearing.

# Law Office of Marcia C. Levine

*A Professional Corporation*
**Post Office Box 5577**
**Auburn, CA 95604**
**(530) 888-9017**

December 6, 2004
**LEGAL MAIL - CONFIDENTIAL**

Ty Erik Lopes
#T-58072
P.O. Box 409099
Ione, CA 95640

Re: People v. T.E. Lopes
Court of Appeal No. C047680
Superior Court No. SP080354B (San Joaquin)

Dear Ty:

I have given thorough consideration to all your
arguments about the issue you want me to raise. It simply
cannot be raised. Ethical and professional standards
prohibit me from raising the issue when I know it is
improper. In addition, there is a harm to you if I file it
in the appeal. A writ of habeas corpus may not be used as a
second appeal. (In re Waltreus (1965) 62 Cal.2d 218, 225.)
This means that an issue raised in an appeal cannot be raised
again in a writ of habeas corpus if the appeal loses. If I
raise it now, you will probably never be able to raise the
issue in a writ of habeas corpus (which, as I've said before,
is how it should be raised if you want to raise it). I will
not jeopardize your opportunity to raise it in a writ.

I have been analyzing the issue in as many ways as I
possibly can. As you know, I discussed it with CCAP staff to
make sure I was not missing any possibility that it could be
raised. They were certain it cannot and must not be raised
in the appeal. If, as you say, the problem is that the
information should not have included the rape and special
circumstance, the only way to attack it was with a 995
motion. That motion was denied. Then the only proper
procedure was to file a writ of mandate/prohibition to keep
the DA from charging you with the rape and special
circumstance. That didn't happen. It was too late to
complain after you were convicted, too later to raise it in
the first appeal, and certainly too late to complain in this
appeal from a limited remand.

There is nothing you can say that will turn this into
an arguable issue. Procedurally and legally it cannot be
raised in this appeal.

Sincerely,

Marcia C. Levine

JESSIE HOWLAND'S TESTIMONY OF AN UNCHARGED ACT
OF SEXUAL ASSAULT DID VIOLATE MY RIGHT TO DUE
PROCESS UNDER THE U.S. CONSTITUTION, DEPRIVING
ME OF A FAIR TRIAL.

As shown in ground five of my habeas petition the prosecutor
maliciously FABRICATED the actual date when Jessie Howland and Jake
Silva were in my bedroom with an "ADULT WOMAN" named Amanda. Moreover,
after a 402 hearing in which Jessie Howland testified the Judge found
the proffered testimony to be admissible without considering one of
the crucial factors set forth in Falsetta, "THE DEGREE OF CERTANTY"
of the "propensity" acts that the prosecutor claims I committed. The
Trial Court did not recognize "veracity" as a factor at all. Instead,
the Judge viewed the issue as purely one of "admissibility." (RT 192:
12-16) (See also pp.38-49 of my Opening Brief on Direct Appeal)

The Judge also horribly failed discern the FACTS as they truly
were regarding the testimony of the LEAD DETECTIVE FOR THE MANTECA
POLICE DEPARTMENT at my preliminary hearing. (See pages 10-12 of this
Traverse) Security video from the beauty salon confirms that Jessie
Howland and Jake Silva were in fact together. (1349: 2-22) However, as
I have shown, the actual date that Jake Silva and Jessie howland were
at my house—WAS FABRICATED. (RT 49: 1-13) The Judge also tried to
help the prosecutor in covering up this fabrication. (RT 49: 17-25)
The prosecutor responded, "YEAH." (26) What's more, as I have already
shown too, the prosecutor was wholly focused on putting me and Jake
Silva together "after" Renee Ramos went missing, NOT on any so-called
"propensity" acts committed by me. (RT 1422: 7-15; 1454: 16-22) The

prosecutor never even attempted to go and contact "Amanda" even after
I told him who she was and told him I had her phone number. (191: 24-
27) The prosecutor then exclaimed, "WE ARE INTERESTED TO KNOW WHO [SHE]
IS." (RT 192: 24,25) The Judge, again, tried to help the prosecutor
cover over his lies. (RT 192: 28; 193: 1,2) THE PROSECUTOR 'ONLY' CARED
ABOUT PUTTING JAKE SILVA AND I TOGETHER DURING THE WEEK RENEE RAMOS
WENT MISSING!! (RT 1422: 7-15; 1454: 16-22)

A defendent's federal constitutional right to a fundamentally fair
trial is guaranteed by the due process clause of the fifth and
Fourteenth Amendments. Due process prohibits the use of state
procedures that OFFEND the principle of Justice so rooted in the
traditions and conscience of our people as to be ranked fundamental.
(Snyder v. Massachusetts (1934) 291 U.S. 97, 105 [54S.Ct. 330; 78L.Ed.
674]; and procedures that UNDERMINE "the ultimate integrity of the fact
finding process." (Ohio v. Roberts (1980) 448 U.S. 56,64 [100 S.Ct 2531,
65 L.Ed.2d. 597].) Such "evidence" would include this FABRICATED
"propensity" scheme in which the prosecutor "ONLY" cared about putting
Jake Silva and I together during the week Renee Ramos went missing.

In cases arising from California state prosecutions, the Ninth
Circut has recognized that "IMPROPERLY ADMITTED 'PROPENSITY' EVIDENCE"
violates the due process rights of the accused. Thus, in McKinney v.
Rees (9th Cir. 1993) 993 F.2d 1378, a California state prosecution for
murder was overturned. A denial of due process in a criminal trial "is
the failure to observe the fundamental fairness essential to the
concept of Justice...the acts complained of must be of such quality as
necessarily prevents a fair trial." (Lisenba v. California (1941) 314
U.S. 219,236.)

The prosecutor in this case deliberately and maliciously lied,

deceived, and fabricated his entire way throughout the criminal
proceedings against me. and the Judge helped him.

Jessie Howland testified that he had only been to my house "ONE
DAY, EVER." (RT 174: 2-4) Jessie Howland finally told the truth saying
that that "one day, ever" was "LIKE A MONTH AGO." The prosecutor then
asked Howland this question: "OH, ABOUT A MONTH BEFORE [Renee's
murder?] Jessie Howland answered, "YEAH." (RT 780: 12-14) Jessie
Howlands TRUTHFUL testimony here is confirmed by the prosecutor's own
slip up in his scam. (RT 49: 1-13) Yes, the prosecutor was caught by
his own mouth in open court!

I respectfully request that this court VACATE my entire conviction.
This "propensity" lie was nothing but a farce and a sham.

Please note too that my Jury was instructed that the "propensity"
acts that the prosecutor claims I committed were in violation of
section 243.4, subd. (a), a felony, (CT 1112; RT 1377) and the Judge
defined the elements of that offense. (CT 1156-1157; RT 1396.) There
was absolutely no evidence that I touched the "skin" of Amanda or that
she was "restrained."

Because my Trial Judge failed to discern what the prosecutor's
REAL MOTIVE for wanting Jessie Howland's testimony admitted and because
of the additional arguement set forth in my Opening Brief on Direct
Appeal, I respectfully request that my entire conviction be reversed.

Please compare Old Chief v. United States (1997) 519 U.S. 172;
Garceau v. Woodford, Supra. Falsetta does not trump the United States
Supreme Court's ruling in Old Chief v. United States. It also appears
that the ruling in Falsetta is outdated, in light of the decision in
Garceau v. Woodford.

_ (38)

THE TRIAL COURT DID VIOLATE MY FEDERAL
CONSTITUTIONAL RIGHT TO DUE PROCESS OF
LAW AND A FAIR TRIAL BY ADMITTING
HEARSAY TESTIMONY THAT THE PROSECUTOR
MALICIOUSLY USED TO VOUCH FOR THE
CREDIBILITY OF ONE OF THE JAILHOUSE
INFORMANTS, MARCUS HOPKINS.

The Respondent relied on Robert Remlinger's hearsay testimony
regarding how he thought that Marcus Hopkins came to the attention of
the District Attorney's Office in order to provide "testimony" against
me in her arguement. The Respondent states that Robert Remlinger's
hearsay to the Judges question in the Reporter's Transcripts at page
1231: 19-22 satisfies the hearsay exception rule, and, therefore, the
Respondent as well as the Court of Appeal feel that I suffered no harm.

Robert Remlinger was my original appointed public defender in this
case and he had worked for over a year preparing to prove my innocence.
Then a PROSECUTORIAL INDUCED conflict of interest ended Mr. Remlinger's
appointment. I was then appointed a private attorney, Bob Wright.

At my trial, Robert Remlinger took the stand and testified that "IT
WAS HIS UNDERSTANDING" that the public defender's office did bring
Marcus Hopkins forword to the attention of the DA's Office. The Judge
then interupted the proceedings and asked Mr. Remlinger this question:

THE JUDGE: "Well, what's your

understanding based upon?"

MR. REMLINGER: "CONVERSATIONS WITH
ASSOCIATES IN MY OFFICE AND COURT PROCEEDINGS." (RT 1231: 19-22)

The hearsay statement above is in large print. The Judge then ruled:

(39)

"IT'S NOT FOR THE TRUTH OF ANY STATEMENT. IT'S FOR THE FACT OF HOW MR. HOPKINS WAS BROUGHT TO YOUR [THE DA'S] OFFICE." (RT 1231: 23-25)

As previously discussed the Court of Appeal affirmed my conviction but remanded me back to the Superior Court to be sentenced on the rape charge because my Trial Judge "forgot" to sentence me on that charge.

Just prior to the remand order being carried out I received a letter here at Mule Creek state Prison, via legal mail, by a "PRIVATE ATTORNEY" named Douglass C. Jacobsen. Mr. Jacobsen was informing me that he had been appointed to represent me on the limited remand order. ~~(She important matter only following this argument)~~ Mr. Jacobsen told me that he needed to come see me and had scheduled a visit with me for July 08,2004, at 1:30 p.m. True to his word--Mr. Jacobsen did pay me a visit.

Immediately after we met he told me that he had to inform me that HE WAS THE ATTORNEY WHO WAS REPRESENTING MARCUS HOPKINS AT THE TIME HE CAME FORWORD IN THIS CASE. He also told me that he had expressed his concern about a possible conflict in representing me but was told by Judge Harrington that "there shouldn't be any problem." Mr. Jacobsen also informend me that HE WAS THE MAN WHO GOT UP AND WALKED PASSED THE CAMERA AND OUT OF THE ROOM DURING A VIDEO TAPED INTERVIEW OF MARCUS HOPKINS THAT OCCURED ON MAY 24,2001.

At my trial Marcus Hopkins testified. During direct examination this exchange took place:

THE PROSECUTOR: "And then you had another interview, did you not, on May 24th?"

MARCUS HOPKINS: " YEAH."

(40)

THE PROSECUTOR: "Of 2001?"

MARCUS HOPKINS: "UH-HUH."

THE PROSECUTOR: "That interview was taped?"

MARCUS HOPKINS: "YES, IT WAS."

THE PROSECUTOR: "And present during that interview were Detective Souza and myself 'AND YOUR ATTORNEY?'"

MARCUS HOPKINS: "YES, IT WAS." (RT 806: 28; 807: 1-9)

As this court can clearly discern, the prosecutor, Chuck Shultz, KNEW FOR A FACT THAT IT WAS NOT THE PUBLIC DEFENDERS OFFICE -- MY OWN ATTORNEY AT THE TIME -- WHO BROUGHT MARCUS HOPKINS TO THE ATTENTION OF THE DA'S OFFICE. IT WAS A "PRIVATE ATTORNEY," DOUGLASS C. JACOBSEN WHO BROUGHT MARCUS HOPKINS FORWORD!

The prosecutor deliberately and maliciously violated my U.S. Constitutional right to due process of law and a fair trial when he used Robert Remlinger as his mouthpiece to personally vouch for the credibility of Marcus Hopkins. Mr Remlinger did not know who brought Marcus Hopkins forword to the attention of the DA's Office. He only heard speculation from "associates in his office and from court proceedings," both of which did not bring to light the truth at all.

I would respectfully submit that the prosecutor would have gotten away with, yet another scam, had it not been for the miraculous appointment of Douglass C. Jacobsen to represent me on the remand order by the Court of Appeal.

After the remand order was carried out I filed a complaint against

(41)

Douglass C. Jacobsen with THE STATE BAR OF CALIFORNIA for not coming
forword to stop the prosecutor from what Mr. Jacobsen must have known
was occuring -- THE IMPROPER VOUCHING -- that the prosecutor used my
own attorney at the time to pull of his scam. (The entire complaint is
submitted as a seperate memorandum in support of this arguement, to
the Traverse)

The prosecutor deliberately and maliciously hid the FACT that is
was a "PRIVATE ATTORNEY, DOUGLASS C. JACOBSEN," who brought Marcus
Hopkins forword to the attention of the DA's Office--NOT MY OWN PUBLIC
DEFENDER. I would respectfully submit that Judge Harrington knew what the
prosecutor was doing, IMPROPERLY VOUCHING FOR MARCUS HOPKINS.

EVIDENTIARY HEARING REQUESTED.

I respectfully request that my entire conviction be reversed.

(Please compare, U.S. v. Young 470 U.S. 18 (1985))

Please also read ground III. of my Opening Brief on Direct Appeal, Case
No. C041516. That brief is submitted as a seperate memorandum to my
habeas petition.

VIII.

THE TRIAL COURT DID ERR WHEN IT REFUSED TO INSTRUCT
MY JURY AND TELL THEM THAT JOSH BURROUGHS DID COMMITT
PERJURY WHILE UNDER OATH, WHICH LIGHTENED THE
PROSECUTOR'S BURDEN OF PROOF AND DENIED ME DUE PROCESS
OF LAW UNDER THE U.S. CONSTITUTION, AND DENIED ME A
FAIR TRIAL.

My Trial Judge clearly stated that "THERE'S 'NO QUESTION IN MY
MIND' THAT JOSH BURROUGHS COMMITTED PERJURY." (RT 1116: 19-21) Inspite
of this statement by my Trial Judge my Jury was still allowed to
deliberate on everything Josh Burroughs testified too.

This cannot possibly be fair or Just in any way. As brought out in
my opening brief on direct appeal, pp. 56-63, I was entitled under U.S.
Law to have my Jury instructed that Josh Burroughs was much more than
"untruthful" or simply "wilfully false" when he testified. Josh
Burroughs was a PERJURER! The Judge stated so himself as shown above.

The right to instruction on the defense theory is "BASIS TO A FAIR
TRIAL." (United States v. Escobar de Bright (9th Cir. 1984) 742 F.2d
1196,1201; Matthews v. U.S. 485 U.S. 58 (1988))

I respectfully request that my entire conviction be reversed.


CONCLUSION

For the reasons that I have shown in my habeas petition and in
this Traverse, I respectfully request that my entire conviction be
vacated and it be ordered that I be acquitted on all counts.

Dated: *January 31, 2007*

Respectfully Submitted,

Ty Erik Lopes

(43)