1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TY ERIK LOPES,

11          Petitioner,                    No. CIV S-06-1657 MCE CHS P

12      vs.

13   ROSEANNE CAMPBELL, et al.,

14          Respondents.          <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16                        I.  INTRODUCTION

17          Petitioner Ty Erik Lopes is a state prisoner proceeding pro se with a petition for

18   writ of habeas corpus pursuant to 28 U.S.C. §2254.  Petitioner is currently serving a sentence of

19   life, without the possibility of parole, following his 2002 convictions for first degree murder,

20   rape, and special circumstance enhancement that the murder occurred during commission of the

21   rape.  Petitioner sets forth various allegations in ten separate claims which have been reorganized

22   for purposes of this opinion into the following claims: (A) the rape charge and special

23   circumstance enhancement were illegally re-filed after the preliminary hearing and should have

24   been set aside by the court; (B) the trial court erred in denying petitioner's motions for acquittal

25   because there was insufficient evidence to support a conviction; (C) the prosecutor committed

26   several *Brady* violations; (D) the prosecutor engaged in prosecutorial misconduct; (E) petitioner

                                       1

received ineffective assistance of counsel at trial and on appeal; (F) the trial judge made two evidentiary rulings in error; and (G) the trial judge committed an instructional error. For the reasons that follow, the claims are without merit and the petition should be denied.

## II. FACTUAL BACKGROUND

The following factual summary of the evidence adduced at petitioner's trial is drawn from the unpublished opinion of the California Appellate Court, Third District, Case No. C047680.[1]

In June 2000, the body of the 18-year-old victim was found at the construction site of a Home Depot. The cause of death was ligature strangulation, and there were signs of manual strangulation. The marks on the victim's body were consistent with being strangled by her bra and the beads that she wore around her neck.

Josh B[urroughs], who was 14 years old at the time of the murder, testified that he was at a party at a Home Depot construction site around Memorial Day 2000. Also present were defendant, the victim, and the victim's boyfriend, Jacob Silva. At the party, Josh saw the victim and Silva arguing, and also saw Silva strike the victim at least twice. Josh testified he left the party shortly thereafter.

Manteca Police Sergeant Anthony Souza interviewed Josh while investigating the victim's murder. Souza took Josh to the Home Depot and, although it looked substantially different, Josh led Souza to nearly the precise location where the body had been discovered. Josh accurately described how the area looked on the night of the murder and the condition of the victim's clothing when the body was discovered.

Prior to a second interview, Josh asked to visit the victim's grave. After staring at the grave, he described what happened the night of the murder. Defendant, Silva, and Raymond Goans were present. Defendant brought alcohol. Silva beat the victim and dragged her from the back rooms to the spot where her body was found. Defendant, Goans, and Silva had sexual intercourse with the victim there. At some point, Silva choked the victim with her bra. Defendant then choked her, holding her up like a "hangman" until she went limp. Goans and defendant then moved the body a couple of feet and covered it.

---

[1] Opinion was lodged in this record on 11/13/06.

In a third interview, Josh told police that Silva choked the victim with his hands before beating her and that, although she had only one beer at the party, the victim was acting as if she had too much to drink.

At trial, Josh testified that he lied to police during the interviews because he was afraid of bad consequences if he snitched. He also was afraid of getting hurt if he testified at prior court appearances. Defendant threatened Josh by telling him, "You're going down, punk."

Marcus Hopkins testified that while they were in jail together in April 2001, defendant told him about being with Silva and the victim at a party at a Home Depot construction site. Defendant brought beer and ecstasy, and someone gave ecstasy to the victim. The victim and Silva then had a fight. Defendant said he held the victim's wrists, thinking that she and Silva were playing. When defendant realized the victim was crying, he let her go. Silva had been having sex with the victim while defendant was holding her down. Defendant told Hopkins that police examining the victim would find DNA evidence from Silva and Goans but not from him.

In exchange for his testimony, Hopkins had three felony counts dismissed. His sentence on the remaining counts was stayed, and he was released from custody.

Charles Cooper testified that while he and defendant were in jail together, defendant said he was charged with the victim's murder. Defendant admitted having sex with the victim but claimed Goans had killed her. Defendant explained that events got out of hand when the victim indicated she was going to call the police. When Cooper asked defendant if he killed her, defendant said "they" strangled her and "they" had to get rid of the evidence. Defendant told Cooper they put rags in the victim's mouth and strangled her but did not mean to kill her. Defendant indicated the murder took place over Memorial Day weekend at a Home Depot that was under construction.

Cooper had a lengthy criminal history, was in jail on numerous charges, and testified he was afraid he would be killed if sent to prison. In exchange for his testimony, Cooper was allowed to serve his time in Humboldt County, where he was placed in an alternative work program. After two days in the work program, Cooper left and remained at large until just before trial.

(C047680 Opinion at 1-2.)

Petitioner was convicted of rape, murder, and the special circumstance enhancement that the murder occurred during commission of the rape.

3

III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

The "contrary to" and "unreasonable application" clauses of §2254(d)(1) are different.  Under the "contrary to" clause of §2254(d)(1), a federal court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405.  As the Third Circuit has explained, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3rd Cir. 1999) (en banc) (emphasis in original).  The state court is not required to cite the specific controlling test or Supreme Court authority, so long as neither the

reasoning nor the result of the state court decision contradict either. *Early v. Packer*, 537 U.S. 3, 8-9 (2002).

The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. *Williams*, 529 U.S. at 410. The focus of this inquiry is whether the state court's application of clearly established federal law is objectively unreasonable. *Id*. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*.

This court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003). If relief is precluded by 28 U.S.C. §2254(d), the court may deny the petition without addressing the merits of the claim. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

## IV.  ANALYSIS OF PETITIONER'S CLAIMS

### A.  Rape Charge and the Special Circumstance Enhancement

Petitioner alleges that the rape charge and special circumstance enhancement were illegally re-filed after his preliminary hearing and that the magistrate judge should have granted his motion to set them aside. (See petition, grounds one and two.)

Petitioner was charged with murder, rape, and the special circumstance enhancement that the murder occurred during commission of the rape. (CT at 1-3.) At the preliminary hearing, the magistrate judge found sufficient cause to sustain the murder charge, but did not find sufficient cause to hold petitioner over for the rape and special circumstance enhancement charges at that time. (CT at 726.)

The district attorney subsequently re-filed all charges in an information. (CT at

5

730-32.)  Defense counsel moved to set aside the rape charge and special circumstance

enhancement pursuant to California Penal Code § 995.  In the motion, defense counsel argued

that the charges could not be re-filed because the magistrate judge had made adverse factual

findings at the preliminary hearing and made a determination of insufficient probable cause.  The

motion was denied and the charges were not set aside.  (RT at 794.)

On review of petitioner's application for writ of habeas corpus, the San Joaquin

Superior Court held that nothing in the magistrate judge's ruling or his statements at the

preliminary hearing precluded the prosecution from re-filing the rape charge and special

circumstance enhancement.  (SP 080354B opinion at 1-2.[2])  Citing *Jones v. Superior Court*, 4

Cal.3rd 660 (1971) and *People v. Day*, 174 Cal.App.3d 1008 (1985) for the applicable California

law, the state superior court found that the magistrate judge did not make any factual findings

and determined that the defense motion was properly denied by the trial court.  (SP080354B

opinion at 1-2.)  This decision was affirmed, without written opinion, by the Third District of the

California Appellate Court and the California Supreme Court.  (C050018 opinion and S135708

docket.[3])

The state courts' interpretation and analysis of the proper application of § 995 of

the California Penal Code may not be challenged in this federal habeas corpus action.  *See, e.g.*,

*Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (state court's interpretation of state law binds a court

sitting in habeas corpus); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province

of a federal habeas court to reexamine state-court determinations on state-law questions");

*Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) (federal courts sitting in habeas

corpus do not review questions of state evidence law).

/////

---

[2] Lodged in this record by respondent on 11/13/06.

[3] Lodged in this record by respondent as documents 13 and 18, respectively, on 11/13/06.

1     Petitioner has not cited any federal law in support of his claim that the rape charge

2  and special circumstance enhancement were illegally re-filed, and should have been set aside by

3  the trial judge.  There is no cognizable federal constitutional claim based on the re-filing of

4  charges after adverse factual findings by a magistrate judge or a determination of insufficient

5  probable cause at a preliminary hearing.[4]  Because petitioner has alleged only violations of state

6  law in this claim, there can be no relief.

7               B.       Denial of Motions for Acquittal/ Sufficiency of the Evidence

8               Petitioner next asserts that the trial court erred in denying defense counsel's oral

9  motions for acquittal of the rape and murder charges made at the close of the prosecution's case.

10 (See petition, grounds three and four.)  The motions were brought pursuant to § 1118.1 of the

11 California Penal Code, which provides for acquittal of offenses where the evidence would be

12 insufficient to sustain a conviction on appeal.  On direct review of this claim, the California

13 Court of Appeal, Third District, affirmed the trial court's denial of the motions  (C041516

14 opinion at 8-12[5]), and the California Supreme Court denied review.  (S123716 opinion.[6])

15              Once again, petitioner's contention that he should have been granted relief under

16 state law presents no federal habeas corpus issue.  The California courts' interpretation and

17 application of § 1118.1 of the California Penal Code is not subject to review by this court.  The

18 trial court's denial of the petitioner's motions to acquit can be challenged only to the extent that

19 he alleges there was insufficient evidence to convict him of the charges.  (See petition, ground

20 10.)

21 /////

22

23        [4] The Double Jeopardy Clause is not applicable because jeopardy does not attach in
   criminal jury trial until the jury is empaneled and sworn.  *Serfass v. United States*, 420 U.S. 377,
24 388 (1975).

25        [5] Lodged in this record by respondent on 11/13/06 as document 1.

26        [6] Lodged in this record by respondent on 11/13/06 as document 9.

Sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); s*ee also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).

It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather, whether rational jurors could have reached the conclusion reached by the jurors at trial. *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991).

The crux of petitioner's insufficient evidence claim is that the testimony given by Josh Burroughs and jailhouse informants Hopkins and Cooper was not credible due to inconsistencies and contradictions, and was therefore insufficient to support his conviction. The state appellate court described the testimony given by Josh Burroughs and the jailhouse informants as follows:

> Josh testified at trial that he only saw Silva beat Ramos and did not witness the murder. However, he previously had told the police he had witnessed the murder. He was able to point to where the body was discovered, describe the sate of the clothing Ramos was wearing when her body was discovered, and provide a detailed description of the murder that was consistent with the physical evidence. The jury could easily find Josh's prior statement credible. Josh was able to recall the spot where the body was found after the Home Depot was completed. The structure looked substantially different than the night of the murder, which makes Josh's ability to find the spot Ramos was found important.

/////

8

Furthermore, Josh's testimony that defendant, Silva, and Goans had sexual intercourse with Ramos before defendant strangled her to death was corroborated by physical evidence and the testimony of the jailhouse informant. Josh's testimony that Ramos was strangled with her own bra was consistent with the autopsy findings that the marks on Ramos's neck were consistent with ligature strangulation, either from her bra or her necklace. Josh's account was also consistent with Cooper's testimony that defendant had said "they" strangled Ramos at Home Depot, that "they" had to get rid of the evidence, and that Ramos was covered with asbestos or insulation. Finally, Josh's testimony that defendant, Silva, and Goans had sexual intercourse with Ramos was corroborated by the hairs recovered from Ramos's body and, in part, by the semen found on her underpants, which was found to have come from Silva. This testimony was also corroborated by Hopkin's testimony that defendant held Ramos down while Silva had sexual intercourse with her and Cooper's testimony that defendant had admitted having sex with Ramos but claimed that "Ray killed her."

The credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. The mere fact that there are contradictions and inconsistencies in the testimony of a witness, or that the truth of his evidence is open to suspicion, does not render it inherently improbable within the meaning of the rule. It is for the jury to consider such inconsistencies and determine whether they were such as to justify the repudiation of the testimony of the witness in its entirety. The test is not whether the witness is truthful, but whether it can be said the testimony in support of the verdict is inherently untrue... A statement, to bear upon its face the brand of improbability, or which may be said to be unbelievable, per se, must involve a claim that something has been done that it would not seem possible could be done under the circumstances described.

Defendant presents no argument that the testimony of how Ramos was killed, if believed by the jury, could not be the truth. Defendant's argument is likewise flawed in relation to the jailhouse informants' testimony, as no substantial argument is made that the testimony they provided, if believed, was inherently improbable or physically impossible. Thus, defendant's argument that the evidence is insufficient to support conviction is based upon the assumption that we must reject the testimony of witnesses entirely because they have lied. This argument fails because of the established principle that credibility is an issue exclusively for the jury. There is nothing inherently incredible about the witness' testimony that Silva, Goans, and defendant were at the Home Depot, that each man had sexual intercourse with Ramos after she had been beaten unconscious, and that defendant choked Ramos to death when they were done.

1    The jury could have believed Josh told the truth after seeing
     Ramos's grave or that the jailhouse informants were telling the
2    truth. There was sufficient evidence for a rational trier of fact to
     reach that conclusion. Defendant's argument is therefore without
3    merit.

4    (C041516 opinion at 9-12.[7])

5          Viewing the evidence in the light most favorable to the verdict, for the reasons

6    described by the California Court of Appeal, there was sufficient evidence from which a rational

7    trier of fact could have found beyond a reasonable doubt that petitioner was guilty of the charged

8    offenses. Petitioner is not entitled to relief on his claim that insufficient evidence supported his

9    conviction.

10                 C.      *Brady* Violations

11         Petitioner alleges that the prosecutor deliberately withheld material impeachment

12   information regarding two witnesses. (See petition, ground five.) In *Brady v. Maryland*, the

13   United States Supreme Court held that the suppression before trial of requested evidence

14   favorable to an accused violates due process where the evidence is material either to guilt or to

15   punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. 83 (1963). In

16   so holding, the court reasoned that "[a] prosecution that withholds evidence on demand of an

17   accused which, if made available, would tend to exculpate him or reduce the penalty helps shape

18   a trial that bears heavily on the defendant." *Id*. at 87-88. The *Brady* duty to disclose applies to

19   exculpatory evidence as well as evidence that could be used to impeach witnesses. *United States*

20   *v. Bagley*, 473 U.S. 667, 676 (1985).

21         Petitioner first alleges that the prosecution withheld statements Josh Burroughs

22   made to detectives two weeks before the preliminary hearing. Defense counsel apparently first

23   became aware of these communications at the preliminary hearing. (CT at 187-88.)

24   /////

25   _____

26         [7] Lodged in this record by respondent as document 5 on 11/13/06.

The United States Supreme Court has specifically held that *Brady* does not require the disclosure of impeachment information prior to entry of a guilty plea. *United States v. Ruiz*, 536 U.S. 622, 629 (2002). Since the withholding by prosecution of impeachment information prior to plea entry is not a constitutional violation, it necessarily follows that the withholding of impeachment information prior to a preliminary hearing is also not a *Brady* violation. As noted by Justice Thomas, "[t]he principle supporting *Brady* was 'avoidance of an unfair trial to the accused.'" *Ruiz*, 536 U.S. at 634 (Justice Thomas, concurring). That concern is not implicated at the plea stage or the preliminary hearing stage.

Petitioner next alleges that the prosecutor failed to disclose, prior to trial, impeachment information about witness Jesse Howlin. At trial, Howlin testified that he was with Jake Silva and petitioner one day during the period of time that the victim was missing. (RT at 173-74.) Howlin testified that the three picked up a young girl and took her to petitioner's house where petitioner and Silva fondled her over her clothes.[8] (RT at 174-181.)

During a pre-trial hearing on pending motions in limine, defense counsel thought he overheard Howlin's name mentioned in an off the record discussion at the prosecution's table. (RT at 49.) In response to his inquiry, the prosecutor stated that Howlin might have been a potential witness against petitioner in another, unrelated criminal case[9], but that those charges had been dismissed, and the subject would not be raised at trial. (RT at 49.) Petitioner argues that the prosecution's failure to disclose this information prior to trial was another *Brady* violation. For the reasons that follow, it was not.

///

---

[8] Contrary to the testimony given by Howlin, petitioner claims that Howlin and Silva were never at his house while the victim was missing, but only on occasions prior to her disappearance. (Petition at 30-31.) This allegation has no bearing on whether petitioner suffered a *Brady* violation, but is examined further herein in subsections (D) and (E).

[9] Petitioner explains that he had previously been charged with burglary for allegedly using someone's ATM card without permission.

First, petitioner has failed to make any showing in support of his allegation that Howlin was actually involved in the unrelated case pending against him. It is not known whether Howlin was actually a witness to the other alleged offense. At the hearing, the prosecutor stated that Howlin might have been a potential witness, but that he was not sure. (RT at 49.) In any event, the charges had already been dismissed by the time petitioner's trial commenced (*See* RT at 49; Petition at 25), and the subject did not come up at trial. Petitioner does not explain exactly what exculpatory or impeachment information regarding Howlin he believes was withheld. His allegations about Howlin's involvement in the other case, and the possible implications on this case, are speculative and cannot constitute a basis for relief in this court. *See generally Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) (affirming denial of *Brady* claim that district court characterized as "mere suppositions").

Even if petitioner's allegations are true, there was no *Brady* violation because the claimed impeachment information about Howlin was not material. In the *Brady* context, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. The relevant question is whether, in its absence of the information, petitioner received a fair trial resulting in a verdict worthy of confidence. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The proper focus is whether the net effect of the undisclosed evidence undermined the outcome of the trial. *Id*. at 421, 436-37; *see also United States v. Sarno*, 73 F.3d 1470, 1506-07 (9th Cir. 1995) (cumulative weight of undisclosed statements of eight witnesses "tugs at loose threads hanging from the margins of the Government's case, but in no way challenges the bulk of the evidence on which the convictions rest").

Here, it does not appear from the record that any connection was ever made between the two criminal cases for which Howlin might have been a witness. At trial, Howlin gave testimony regarding the instances he saw petitioner and/or Silva during the time that the victim was missing. (RT at 170-89.) Petitioner does not explain the relevance of the possibility

that Howlin was a potential witness against him in another case, which was dismissed, or how such knowledge would have changed the outcome of his trial.  The prosecution's proffered reason for Howlin's testimony was that it was propensity evidence of a prior sexual offense, which is permissible under California law.  Petitioner claims that the prosecution actually wanted to place petitioner with Silva during the relevant time period.  (Petition at 22.)  Either way, the alleged undisclosed evidence that Howlin was a potential witness in an unrelated case in no way challenges the bulk of the evidence on which petitioner's conviction rests, nor does it undermine confidence in the outcome of the trial.

Petitioner's final allegation for his *Brady* claim is that the prosecution was late in turning over discovery related to witness Charles Cooper, one of the jailhouse informants.  Cooper testified that petitioner made statements to him in jail about the rape and murder.  (RT at 869; 881-88.)  At trial, it was found that the prosecution had failed to timely disclose the facts behind one of Cooper's many prior arrests.  The trial judge allowed Cooper to testify, but gave an instruction informing the jury that the prosecution had failed to timely disclose the facts behind Cooper's arrest for a violation of Penal Code Section 148.9 in Eureka, California in November of 2000.  (RT at 1376-77.)

Petitioner alleges that the late disclosure of this discovery information caused his attorney and investigator to "lose focus on much more important issues."  The late discovery of evidence, however, is not a due process violation if the defense receives the evidence in time to make use of it at trial.  *United States v. Gamez-Orduno*, 235 F.3d 453, 461-62 (9th Cir. 2000).  Here, despite not receiving the information within the time provided under California law, defense counsel had an adequate opportunity at trial to cross-examine Cooper regarding the facts of the prior arrest which had not been timely disclosed.  (RT at 889-912.)  The discovery information was thus received by the defense in time for use at trial.

Petitioner has failed to demonstrate that he suffered a *Brady* violation or that his due process rights were otherwise violated in relation to discovery that was allegedly withheld or

1 | not received in a timely manner.

2 |           D.      Prosecutorial Misconduct

3 |        Petitioner also alleges that the prosecutor withheld discovery information as
4 | alleged above with specific intent to deceive the jury. (See petition, ground five.) The standard
5 | of review for prosecutorial misconduct is "the narrow one of due process." *Darden v.*
6 | *Wainwright*, 477 U.S. 168, 181 (1986). According to the Supreme Court, "the touchstone of a
7 | due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not
8 | the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). A federal court
9 | sitting in habeas corpus must distinguish between "ordinary error of a prosecutor and that sort of
10 | egregious misconduct" that "so infected the trial with unfairness as to make the resulting
11 | conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 47-48
12 | (1974).

13 |        First, petitioner alleges that the prosecutor deliberately withheld the information
14 | regarding Howlin's involvement in his other criminal case prior to the preliminary hearing in
15 | order to adversely affect his defense. No evidence of record supports this allegation. Moreover,
16 | as discussed above, the significance of Howlin's involvement in the separate and unrelated
17 | charges is not evident, so that it does not appear that it could have affected the fairness of
18 | petitioner's trial.

19 |        Petitioner next states that the prosecutor lied at the preliminary hearing when he
20 | indicated that he had dismissed unrelated burglary charges formerly pending against petitioner.
21 | According to petitioner, the prosecutor's statement could not be true because a different
22 | prosecutor handled the burglary case. Petitioner does not explain how he knows who in the
23 | district attorney's office was involved in the decision to dismiss the burglary charges. Upon the
24 | record of this case, there is no evidence that the prosecutor's remark was false or misleading, or
25 | that it affected the fairness of petitioner's trial.

26 | /////

1    Finally, petitioner alleges that the prosecutor put on false or misleading testimony

2 at trial through Jesse Howlin and a Manteca police officer. Petitioner maintains that Howlin and

3 Silva were not at his house during the period of time that Ramos was missing, despite Howlin's

4 testimony to the contrary. (See subsection C, *supra*.) Again, the allegation is speculative and

5 without support. Even if Howlin's testimony in this regard was false, there is no evidence that

6 the prosecutor knew or should have known that it was false.

7    With respect to the Manteca police officer, petitioner does not allege that the

8 officer's testimony was false, but rather, that it was misleading. The arresting officer from the

9 Manteca police department testified as follows:

10    Some of the statements that he made to me caught me so off guard
      I actually went outside the room, and I had to write them down
11    verbatim. I had no paper with me. I think I had the booking form I
      took out of my pocket to write them down....
12    [¶] He said... what do you think Jake did with the backpack and
      shoes? I bet he burned them. This was the statement that caught
13    me most by surprise. And then I walked out of the room and wrote
      it down.

14

15 (RT at 88-89.)

16    Petitioner complains that the officer's testimony implied that only someone who

17 was involved in the murder would have known that Ramos' backpack and shoes were not found

18 with her body, when in fact, this detail had been reported by the media. Petitioner also complains

19 that the prosecutor referenced the Manteca police officer's testimony in closing arguments.

20 Nonetheless, the testimony has not been shown to be false, nor is there any evidence that the

21 prosecutor had any intent to deceive the jury.

22    The record before this court contains no support for petitioner's allegations of

23 deliberate deception by the prosecutor. He received a fair trial and has no viable claim of

24 prosecutorial misconduct.

25 /////

26 /////

E.     Ineffective Assistance of Counsel

Petitioner alleges that he received ineffective assistance of counsel (1) at trial and (2) on appeal.  (See Petition, grounds six and seven.)

A showing of ineffective assistance of counsel has two components.  First it must be shown that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  After the acts or omissions that are alleged not to have been the result of reasonable professional judgment are identified, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (*quoting Strickland*, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

The second factor required for a showing of ineffective assistance of counsel is actual prejudice caused by the deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice may be found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id*.; *see also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

1.     Trial Counsel

Petitioner states that trial counsel provided ineffective assistance in the following two ways: (a) failed to pursue a writ of mandate challenging the trial court's denial of the defense motion to set aside the rape charge and special circumstance enhancement at the § 995 hearing; and (b) failed to obtain discovery regarding the burglary charges which were pending against him

in an unrelated criminal case.

First, petitioner's opinion that trial counsel was ineffective by not filing a writ of mandate regarding the court's ruling on the § 995 motion is conclusory and unsupported. There is no reason to believe that a petition for writ of mandate would have been granted. As determined by the San Joaquin Superior Court in response to petitioner's application for writ of habeas corpus, the § 995 motion was properly denied by the trial court under state law. (SP 080354B opinion at 2.)

With respect to the allegation that discovery relating to the burglary charges was never obtained, petitioner has failed demonstrate that counsel's performance fell below an objective standard of reasonableness. It appears that the two criminal cases pending against petitioner were completely unrelated, except for the possibility that Howlin was a potential witness in both cases. Petitioner does not explain why, if true, this fact would indicate a need to conduct discovery regarding the case which had already been dismissed.

Petitioner argues that if his counsel had obtained discovery regarding Howlin's involvement in the other, unrelated case, the prosecutor would not have been able to "trick" the jury, through Howlin's testimony, into believing that petitioner had been with Silva during the time that Ramos was missing.[10] (Petition at 30.) Petitioner does not explain, however, how any additional information about the other case could have helped him show the jury that he was not with Silva during that period of time as Howlin testified. There is no reason to believe that Howlin would have changed his testimony, or that defense counsel would have been able to effectively impeach his testimony, had additional discovery been conducted. There simply is no apparent link between Howlin's involvement in the two cases.

/////

---

[10] Howlin testified that he and Silva went to petitioner's house two days after June 1, 2000 (RT at 767-68) (this was during the period of time that Ramos was missing), yet petitioner maintains, without support, that Silva and Howlin were only at his house *prior* to Ramos' disappearance. (See Petition at 30-31.)

1    In any event, petitioner did not suffer any prejudice.  The alleged omissions made

2    by counsel did not affect the result of the proceeding.  An application for a writ of mandate

3    following the § 995 hearing would have been denied.  In addition, counsel was aware of

4    Howlin's possible involvement in petitioner's other criminal case by the time trial commenced.

5    Defense counsel had a full and adequate opportunity to cross-examine Howlin at trial.  (RT at

6    182-188.)  There is no indication that there is anything counsel could have done to elicit different

7    testimony from Howlin than what was given regarding the incident at petitioner's house and

8    when it occurred.  Petitioner has failed to establish either prong required for showing of

9    ineffective assistance of counsel at the trial level.

10                    2.    Appellate Counsel

11            The *Strickland* standards of ineffective assistance apply to appellate counsel as

12    well.  *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th

13    Cir. 1989).  There is, however, no constitutional right to compel appointed counsel to press

14    nonfrivolous points requested by the client, if counsel, as a matter of professional judgment,

15    decides not to present those points.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  There is also, of

16    course, no obligation to raise meritless arguments on a client's behalf.  *See Strickland*, 466 U.S.

17    at 687-88 (requiring a showing of deficient performance as well as prejudice).  Counsel is not

18    deficient for failing to raise a weak issue.  *See Miller*, 882 F.2d at 1434.

19            Petitioner alleges that appellate counsel failed to raise crucial issues on appeal.

20    The specific issues which he believes appellate counsel erred in omitting on appeal are those set

21    forth in his application for writ of habeas corpus to the San Joaquin Superior Court filed on June

22    21, 2005.  Those issues are as follows: (a) the prosecution illegally re-filed the rape charge and

23    special circumstance enhancement after the magistrate found insufficient evidence of such

24    charges at the preliminary hearing; (b) the trial court erred in denying petitioner's § 995 motion;

25    and (c) the trial court erred in denying petitioner's § 1118.1 motions to acquit on the rape and

26    murder charges at the close of the prosecution's case.

The San Joaquin Superior Court held that these issues were without merit:

> Simply because there may be numerous potential issues to raise on appeal, the failure to raise one or more of the issues does not automatically translate into ineffectiveness of appellate counsel. Appellate counsel had an ethical obligation to raise only those issues that have merit and that are subject to appellate review. [¶] As already concluded by this court in its Order of June 9, 2005 and contrary to Petitioner's own opinions on the issue, the court found no error by the trial court in its conduct/rulings as to any of the [ ] issues alleged here. It would appear that appellate counsel also reached such conclusion finding the issues presented no legitimate basis for appeal and therefore did not include them in the appeal. Petitioner has failed to offer any new evidence or law which would support a claim of ineffectiveness of counsel on this basis.

(SP 080354B opinion at 1-2).

As set forth herein in subsections (A) and (B), *supra*, petitioner's claims relating to §§ 995 and 1118.1 of the California Penal Code set forth issues of state law, as opposed to federal law. This court is bound by the state court's interpretation of such state law issues. *Bradshaw*, 546 U.S. at 76; *Estelle v. McGuire*, 502 U.S. at 67-68 (1991). Since the state superior court found these claims to be without merit, appellate counsel was not ineffective in failing to raise them on direct appeal. Relief is precluded as the decision of the state superior court is not contrary to, nor an unreasonable application of, any federal law as set forth by the United States Supreme Court.

F.      Evidentiary Rulings

Petitioner alleges that the trial judge made two evidentiary rulings in error, depriving him of his right to due process and a fair trial. (See Petition, grounds eight and nine.) Specifically, petitioner claims that the trial judge erred in admitting (1) Howlin's testimony about the uncharged act of sexual assault; and (2) hearsay evidence regarding jailhouse informant Hopkins and the circumstances under which he provided information to police. (Petition at 34.)

Howlin's testimony was offered by the prosecution pursuant to § 1108 of the California Evidence Code, which allows evidence of uncharged sexual offenses to be admitted against a defendant being tried for a sexual offense, so long as the probative value of the

testimony is not outweighed by the possibility of prejudice. (C041516 opinion at p.12-13.) The trial court found the offered testimony to be more probative than prejudicial, citing the closeness in time between the charged and uncharged acts and the similarity between the two incidents. (RT at 192.) Howlin testified at trial that he, Silva, and petitioner picked up a young girl and took her to petitioner's house, where Silva and petitioner fondled her over her clothes. (RT at 768-77; 783.)

Hopkins was called by the prosecution to testify that petitioner made incriminating statements about the murder while they were in jail together. (RT at 799.) The defense then called petitioner's pretrial attorney[11] to testify that he had instructed petitioner not to talk to anyone in jail about his case. (RT at 1224-1225.) During cross-examination, it was revealed that the public defender's office sometimes takes clients with information about other cases to the prosecutor's office. The prosecutor inquired whether that had occurred with respect to the case being tried. Over the defense's hearsay objection, petitioner's pretrial attorney testified that someone else from the public defender's office had taken witness Hopkins to the prosecutor's office for him to give information regarding the case being tried against petitioner. (RT at 1230-31.) Petitioner alleges that this testimony was inadmissible hearsay and complains that it bolstered Hopkins' credibility because the jury could infer that the public defender's office would not have taken Hopkins to the prosecutor if they did not believe his testimony.

Because a violation of state law does not ordinarily provide a basis for habeas relief (*Estelle*, 502 U.S. at 67-68), these evidentiary rulings, even if erroneous, are grounds for federal habeas relief only if the proceedings were rendered so fundamentally unfair as to violate due process. *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000), *cert. denied*, 532 U.S. 984 (2001); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999). In order for erroneously admitted

---

[11] Petitioner's trial attorney did not represent him for all pretrial proceedings. Petitioner's original attorney, who was from the public defender's office, represented him for pretrial proceedings until a conflict developed because the office also represented witness Hopkins.

evidence to constitute a due process violation, the evidence must be "be of such quality as necessarily prevents a fair trial." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). In other words, "[o]nly if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process." *Id*. (emphasis in original).

At petitioner's trial, the jury could have rationally inferred that if he committed a sexual offense on a previous occasion, he was more likely to have committed the sexual offense in question. This is a permissible inference under § 1108 of the California Evidence Code. Likewise, the jury could have rationally inferred that no one from the public defender's office actually knew whether Hopkins was telling the truth about the statements that petitioner allegedly made to him in jail. Because there are rational, permissible inferences the jury could have drawn from both pieces of challenged evidence, petitioner's trial was not fundamentally unfair, and he suffered no constitutional error. *Jammal*, 926 F.2d at 920-21.

G.      INSTRUCTIONAL ERROR

Petitioner alleges that the trial judge erred in refusing to give a requested instruction to the jury on perjury. (See petition, ground 11.) Defense counsel had requested the court to instruct the jury that a person who gives false testimony after taking an oath is guilty of perjury, and further requested that the instruction be modified to relate to Josh Burrough's testimony so the jury would know it could reject his testimony if it wished. The trial court denied the request for the perjury instruction. (C041516 opinion at 20.) Instead, the court gave the standard instructions relating to witness testimony, including CALJIC Nos. 2.13 (prior consistent or inconsistent statements), 2.20 (believability of witness), 2.21.1 (discrepancies in testimony), 2.22 (weighing conflicting testimony), 2.23 (believability- prior felony), 2.23.1 (believability- prior misdemeanor), 2.24 (believability- character for honesty), and 2.27 (sufficiency of one witness' testimony). *Id*.

A claim of instructional error does not raise a cognizable federal claim, unless the error "so infected the entire trial that the resulting conviction violates due process." *Estelle v.*

*McGuire,* 502 U.S. 62, 71-72, (1991); *see also Henderson v. Kibbe,* 431 U.S. 145, 154 (1977); *Cupp v. Nauhten,* 414 U.S. 141, 146-47 (1973). Moreover, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil,* 541 U.S. 433, 437 (2004).

When the claim of error rests on a trial court's failure to give an instruction, the petitioner must show not only that the failure to give the instruction was error, but also that the error so infected the entire trial that he was deprived of his constitutional right to a fair trial. *Henderson,* 431 U.S. at 154. Because an omitted instruction is less likely to be prejudicial than a misstatement of the law, a petitioner seeking habeas relief based on a failure to give a particular instruction bears an especially heavy burden. *Id.* at 155.

The California Court of Appeal rejected petitioner's claim of instructional error on direct appeal:

> The instruction proposed by defendant was designed to provide the jury with a reason to reject all or part of Josh's testimony. However, the standard instructions used by the court already made this point clear to the jury... The only difference between the import of the [given] instructions and that requested by defendant is the use of the word perjury. Because defendant's proposed instructions would merely have elaborated on these general instructions, the trial court's refusal to give them was not error.

(C041516 opinion at 21-22) (internal quotation omitted.)

For the reasons identified by the California Court of Appeal, the trial court's failure to instruct jurors as the defense requested did not so infect petitioner's trial that he was deprived of his right to due process.

V. CONCLUSION

For all the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 11, 2009

*Charlene H. Sorrentino*

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE