TY ERIK LOPES #T58072
MULE CREEK STATE PRISON
P.o. BOX 409020
IONE, CA 95640

# FILED

MAR 2 6 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK



IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TY ERIK LOPES,<br>                    Petitioner,<br><br>    v.<br><br>ROSANNE CAMPBELL, et al.,<br>                    Respondent's, | CASE NO.: 2:06-cv-01657 MCE CHS<br><br>**OBJECTION TO MAGISTRATE JUDGES FINDINGS AND RECOMMENDATIONS FILED IN THIS COURT ON MARCH 11/2009** |

Petitioner, Ty Erik Lopes, hereby OBJECTS to the magistrate's report and recommendation in the above entitled matter. Petitioner provides the following FACTS in support of his objection.

1.    The magistrate has completely ignored the facts of petitioner's Claims. Petitioner submits that the magistrate has totally ignored the FACTS of the word for word record of what transpired at petitioner's preliminary hearing as well as at his actual trial.

2.    Petitioner was illegally charged in the information with Rape and special circumstances  following the magistrates inimical <u>findings</u> at the end of his preliminary hearing. **(Ground 1, habeas petition)** Petitioner submits that the state courts findings of fact that the

(1)

magistrate **"did not make any factual findings"** at the end of his preliminary hearing is nothing short of a gross misrepresentation of the clear FACTS of the actual word for word record. **(28 U.S.C. §2254(d); See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362, 402-03 (2000); Lockhart v. Terhune 250 F.3d 1223, 1229 (9th Cir. 2001).** The Magistrate clearly and expressly found <u>for a fact</u> that petitioner was **"only an accessory after the fact"** to what he believed another person did. The magistrate even stated: **"I do not believe that that will make him liable under special circumstances on 190.2(a)."** (CT 846:7-24; 847:1-7) How anyone can say with a clean conscience that the state courts findings, as to petitioner's claim in ground one of his habeas petition, "were not unreasonable in light of the evidence presented in the State court proceedings," is completely mind-boggling! As petitioner clearly argued in ground two of his habeas petition: the 995 hearing was illegally forced. The 995 judge clearly substituted the weight and the sufficiency of the evidence for that of the magistrates as well! Petitioner, again, submits that the FACTS speak for themselves when one reads the actual word for word record of the 995 judges illegal ruling! **(See Ground 2, habeas petition)**

3.      Petitioner was illegally denied an acquittal as to all counts following the prosecutions case-in-chief. Petitioner's trial judge, who was also his pretrial magistrate, clearly stated that **"the evidence is insufficient to establish the commission of the crime** (rape) **specifically charged in the accusatory pleading,"** when he ruled on petitioners 1118.1 motion for acquittal! **(RT 1050:22-24)** The judge even deleted the lesser included offense of "attempted rape" that he mentioned in his ruling. **(RT 1107:12, 13)** Then, on the very same day he did that, he completely agreed to the FACT that **"there was NO EVIDENCE that he was there even,"** at the so-called, "Home Depot party." **(RT 1086:**

(2)

10—1087:19) Petitioner even showed by the word for word record as to what actually transpired that his trial judge completely blew-off the peoples <u>entire theory</u> as to why Renee Ramos was murdered! **(RT 1129:3-5)** The judge wasn't about to **"buy"** Josh Burroughs' testimony either! **(RT 234:15, 16)** The Ninth Circuit Court of Appeals has clearly ruled that when a trial court rules that there was "insufficient evidence" to establish certain elements of the charged crime, and in this case, the entire charged crime itself, the Ninth Circuit Court has expressly ruled that the phrase "insufficient evidence" is a term of art and— absent a contrary indication—means that the evidence is insufficient to support a conviction as a matter of law and is equivalent to an acquittal and barred retrial under the Fifth Amendment. **(Mannes, supra, 967 F.2d. at pp.1315, 1316)** Petitioner clearly showed that it is also clearly established that the courts need not restate the substantial evidence standard or use "magic words" whenever they determine that the evidence is insufficient as a matter of law. It is merely requested of trial courts that they make their ruling clear enough for reviewing courts, like this court is, to confidently conclude that they viewed the evidence in light most favorable to the prosecution. Petitioner clearly showed what his trial judge said during his ruling: He said, **I have listened to the evidence."** The judge was clearly referring to the prosecutions evidence as petitioner hadn't even began a defense case yet which the judges ruling illegally forced him into doing! **(RT 1050: 28—1051:1)** The United States Supreme Court has long held that what constitutes an acquittal is not to be controlled by the form of the judges action. **(Martin Linen Co., supra, 430 U.S. at p.571 [97 S.Ct. at p.1354].)** Rather, appellate courts "must determine whether the ruling of the judge, whatever its lable, actually represents a resolution, correct or not, of some or all of the factual elements of the offense

charged." **I bid, [97 S.Ct. at 1355].**) If the trial court rules the evidence is insufficient as a matter of law and then goes on to agree to the stated FACT that **"there was NO EVIDENCE that he was there even,"** then it becomes clear that petitioner is entitled to an acquittal as to all charges! It doesn't even matter if the courts ruling was patently erroneous or even if the court has no statutory authority to make the ruling. (**Sanabria v. United States (1978) 49 Cal. 2d. 199, 203, 209 [316 p.wd. 633]; Fong Foo v. United States (1962) 369 U.S. 141, 143 [82 S.Ct. 671, 672, 7 L.Ed.2d. 629][a ruling by a trial court entitling a defendant to an acquittal barrs retrial even if the ruling is egregiously erroneous and the court lacks the power to make the ruling].**) Petitioners trial judge also <u>conspired</u> with the prosecution to present false evidence to the jury with regard to the Jessie Howland scheme shown by petitioner on pages 22-25 of his petition and on pages 11 and 12 of his Traverse to the Respondents "Answer."\* Thus, the District Court Magistrate's statement at page **7:17-19** of her Report and Recommendation, is seriously flawed! The "evidence" is no issue in light of petitioner's trial judges clear ruling on petitioner's 1118.1 motion for acquittal as to the specific charge of rape and special circumstance, and as to all counts in general in light of Petitioner's trial judges complete agreement to the stated FACT that **"there was NO EVIDENCE that he was there even."** The judge said, **"I know that." (RT 1087:19)**

Petitioner has clearly demonstrated a horrible deprivation of his United States Constitutional Rights as set forth in the United States Constitution and as well as in clearly established United States Supreme Court Law! (**28 U.S.C §2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d.1083, 1085 (9th Cir. 1985)**

---

\* Petitioner will speak further to that horrid scheme later in this pleading. However, this court can start by reading RT 49:1-26; 192:28—193:1) Petitioner respectfully asks this court to read the record in the exact order cited.

(citing **Engle v. Isaac, 456, U.S. 107, 119 (1982)).** The State courts decision denying petitioner's claims as to grounds three and four in his habeas corpus petition, were totally based on an unreasonable application of clearly established Federal Law, as determined by the Supreme Court of the United States of America! Petitioner has clearly demonstarted that Supreme Court precedent requires the contrary outcome. **(Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3rd Cir. 1999)(en banc)(emphasis in original).** Furthermore, the last reasoned decision as to petitioners first four grounds in his habeas corpus petition were based solely on the Appellate Court's ruling that petitioner did not show enough prejudice to warrent relief.**(Third District — Court of Appeal, Order filed July 28,2005; No. C050284)** *

Thus, the San Joaquin County Superior Court's "reasons" for denying atleast the first four grounds presented by petitioner in his habeas corpus petition, which order was filed in the Superior Court on June 9/2005, is not valid! Therefore, the District Court Magistrate's Report and Recommendations as stated on pages 5-10, must be rejected.

4.           **THE EVIDENCE WAS INSUFFICIENT TO SUPPORT
             PETITIONER'S CONVICTION AS A MATTER OF
             LAW REQUIRING AN ACQUITTAL ON ALL COUNTS.**

Josh Burroughs' story was so far off from what the actual evidence showed, that to say that petitioner's argument "fails" because of the established principle that credibility is an issue exclusively for the jury, and that "there was nothing inherently untrue about the witnesses' testimony," is grossly unreasonable! Josh Burroughs repeatedly told the police that Renee Ramos was beaten, even to the point of unconsciousness. However, the Pathologist, Dr. John

* See also petitioner's "Emergency Motion..." filed in this court on August 3/2007. Therein, petitioner argued the clear FACTS as to grounds 3 and 4 of his habeas corpus petition.

Cooper, who conducted an autopsy on Renee Ramos' body on the day after she was found dead, testified: **"No, I don't see any evidence of that."** **(CT 279:12-15)** Josh Burroughs also told the police that petitioner, Jake Silva,and a third man, Raymond Goans, each "raped" Renee Ramos.* However, again, the Pathologist, Dr. John Cooper, testified that **"there was no evidence of any sexual contact at all in close relation to Renee Ramos' death." (CT 270:18-20)** Josh Burroughs also told the police that Renee Ramos' pants were "unbuttoned," when in reality, her pants **laced-up like a shoelace in the front! (RT 621:19-28; 584:18— 585:2)** Josh Burroughs also told police that Renee Ramos was strangled to death by her bra being pulled up around her neck. However, the Pathologist, Dr. John Cooper, after being backed into a corner, finally testified as to what the <u>actual evidence showed</u>; Renee Ramos was strangled to death by the three necklaces that she was wearing.**(RT 398:9-20; CT 278:15, 16)** Josh Burroughs also told the police that "someone brought the keys" to the Home Depot store and let everybody in to party. However, it was proven by petitioner that **there were no doors on the brand-new Home Depot store yet! (RT 617:21—618:5)** Josh Burroughs also told the police that his mother picked him up from the "party" in her V.W. Bug. However, it was proven that Josh's mother had already sold her V.W. long before Renee Ramos ever went missing. Josh Burroughs' response to that FACT was: **"That should be the end right there." (RT 678:3)** The OLD SPERM STAIN that was found in the **"crotch"** of Renee Ramos' underwear was found to have come from Jake Silva, <u>**HER LONG TIME BOYFRIEND!**</u> The DNA expert testified that **"nobody could determine how long the DNA from the sperm had been deposited on Renee Ramos' underwear." (RT 513:9, 10)** The DNA that matters in this case

---

\*   Raymond Goans was not charged with any crimes against Renee Ramos. He currently lives in a different State.

(6)

that **"was found"** under Renee Ramos' fingernails didn't match petitioner,
Jake Silva, Raymond Goans, or any of the other five suspects who were
tested by the Manteca Police Department! **(RT 513:3, 4; 512:14-23)** Even
the prosecutor believes that Renee Ramos must have fought to stop her
attacker from strangling her. **(RT 1430:24-27)** And even the the LEAD
DETECTIVE for the Manteca Police Department who was assigned to find
who murdered Renee Ramos, when backed into a corner by defense counsel,
<u>confessed</u> that they **"STILL DON'T"** know where she was killed! **(CT 544:4-
16; RT 953:21—954:2; CT 546:5—547:22; RT 975:5-21)\*** Petitioner submits
that the prosecutors statement to the jury during his closing argument
that they should ignore the **"somebody"** who testified that there wasn't
**"any evidence of any sexual contact 'at all' in close relation to Renee
Ramos' death,"** and that they should convict petitioner of rape
**"irregardless of the physical evidence,"** is horrid! **(CT 270:18-20; RT
1430:19-23)²** Josh Burroughs also testified that he could tell that
Renee Ramos was waking up because she started **"yawning." (CT 1046, Vol.
4 of Clerk's Transcripts)** Josh testified that he was able to show the
police where Renee Ramos' body was found because **"that was the only one
[spot] I saw when they took me there,"** to the Home Depot store. **(CT 322:
18)** Josh Burroughs testified that he **"learned everything... from
watching the television, from hearing rumors from people, <u>and from what
the police told him</u>." (RT 731:10-22)** Aside from getting his information
from the news on television and from the Manteca rumor mill, Josh
actually pointed to the prosecutor and the Manteca police Detective,
from the witness stand, and said, **"And partly from them right there."**
**(RT 615:2)** Josh Burroughs couldn't even identify the shirt Renee Ramos
was wearing even after being shown it by the prosecutor while Josh

---

\*    Petitioner, again, respectfully asks this court to read the cited transcripts in
the exact order cited.
²    The **"somebody"** that the prosecutor was clearly referring to was the Pathologist, Dr.
John Cooper, who conducted the autopsy on Renee Ramos' body.

Burroughs was up on the witness stand. **(RT 542:28—543:4)** Josh
Burroughs continued his story telling because the police were
pressuring him too while at Renee Ramos' graveside. **(CT 375:20-24;
376:1-3, 21-27; RT 648:20—649:16)** Josh also told the police that
Renee Ramos drank a 32oz beer at "the party." **(RT 550:12-19)** However,
the actual evidence showed that **"there were no signs of alcohol or
any other drug in Renee Ramos' system." (RT 519:15—520:22)** The
Respondent's explination for Josh's MASSIVE INCONSISTENCIES was that
**"he was afraid of the bad consequences if he snitched."** Josh Burroughs
was referring to his friends who were arrested for car theft with him.
**(RT 605:25—606:2; 568:18—569:10)** That's exactly why Josh Burroughs
started lying in the first place! Josh Burroughs was not worried about
the bad consequences of any Home Depot murder suspect. He was worried
about snitching off his own friends. In fact, that is also why the
Manteca Police Department had to <u>switch</u> lead detectives. They had to
**"appease"** themselves **(RT 954:2),** or in other words, justify their <u>**JUST
A LIE,**</u> after it had already been determined by the original lead
detective, Joe Morgon, that Josh Burroughs was in no way associated
with the murder of Renee Ramos! **(CT 548:11-13; RT 968:5-14)**

The Pathologist testified that Renee Ramos was murdered on either
June the 2nd, the 3rd, or the 4th, of 2000. **(RT 397:12-21)** Renee Ramos'
body was found by a construction worker at the brand-new Home Depot
store on the **morning** of June 5/2000, with live maggots in her mouth and
in her vagina. **(RT 313:5-16;315:7-16; CT 251:16-21)** The Pathologist,
Dr. John Cooper, testified that it takes **"'at least' 48 hours for
maggots to hatch once a body is visited by flies." (CT 251:22—252:4;
RT 367:25-28)** The expert also testified that there was **"skin slippage,"**
meaning that her outer layer of skin was already sluffing off. **(RT 367:
3-10)** The expert went on to testify that it takes **"fourty-eight to**

(8)

seventy-two hours for skin slippage." (RT 367:16, 17) Petitioner submits that, because the Manteca Police Detectives insist that "the party" occured in the late evening time, the experts testimony that Renee Ramos died on Saturday, June 3rd, or even Sunday, June 4th, is absolutely impossible because of the maggots and the skin slippage! Petitioner asserts that the prosecution conspired with the Pathologist, Dr.John Cooper, to falsify Renee Ramos' time of death! Petitioner asserts that their motive for doing so was so that a teenage party would sound more plausable to have occured on the weekend, instead of on a weekday, and on a school night at that! Petitioner submits that the last week of school for all the kids in the Manteca Unified School District was, in fact, the week of May 29/2000. Petitioner respectfuuly asks for an evidentiary hearing because of the extent that he has been able to develope the FACTS and the evidence in support of his theory. Petitioner did file a motion for F.B.I. involvement due to the strong evidence that Renee Ramos was kidnapped and held prior to her earliest possible time of death. Renee Ramos went missing on the morning of May 29/2000, Memorial Day. (RT 343:28—344:20, 25-28—345:5; 346:17—349:24) Interestingly, Renee Ramos was found, it appears, in the same clothes that she was wearing when she went missing. (CT 698:16—701:2) Petitioner's motion for F.B.I. involvement was denied on March 3/2008, by U.S. Magistrate, Dale Drozd. However, he did state that "to the extent petitioner is able to develope the fact and the evidence in support of his theory, it may be presented to the court and may be considered when the claims of the pending petition are addressed on their merits." (Order, p. 4, lines 1-3) According to the experts testimony as to Renee Ramos' time of death, Renee Ramos was missing and totally unaccounted for for well over four full twenty-four hour days prior to her earliest possible time of death. (RT 397:12-21) However,

the actual evidence proves that Renee Ramos was murdered much sooner than what everyone has been lead to believe! The prosecutor himself prounced Renee Ramos dead already prior to June 1/2000, as he insists that it was **"after"** Renee Ramos went missing but before her body was found -- **"between the murder and death and discovery of the body of Renee Ramos,"** that petitioner and Jake Silva, and another young kid named, Jessie Howland, were all three together at petitioner's home. **(RT 169:12-23; 42:28—43:1; CT 620:8-16, 25—621:1, 7-9, 12-26; 632:22—633:22)\*** Thus, petitioner and Jake Silva could not have been at a Home Depot "party" on the evening of June 2/2000, while at the same exact same time, were together with Jessie Howland at petitioner's home! **[2]** Jessie Howland has never been implicated in the murder in any way.

### JESSIE HOWLAND

Jessie Howland was a seventeen year-old kid whom the prosecutor used to provide "propensity" evidence against petitioner. However, it was reveled, when the prosecutor and his detective were conferring with each other just a little bit to loud while sitting at the same table as petitioner and his counsel were, that the actual time that Jessie Howland was with Jake Silva at petitioner's home was **"was like a month ago,"** testified Howland. **(RT 49:3-13; 780:12) "Oh, about a month before,"** Renee Ramos went missing. **"Yeah,"** testified Howland. **(RT 780: 13, 14)** Jessie Howland made it completely clear when he proclaimed, **"No, not the same day as the hair color."** (RT 769:10, 11) Jessie Howland was clearly referring to the day that he was with Jake Silva when Silva had his Mohawk colored burgandy. **(CT 618:16-22)** Indeed, a

---

\*   There, the new lead detective for the Manteca Police Department swares to God that petitioner, Jake Silva, and Jessie Howland, are together from the evening of June 1/ 2000, all the way through to the afternoon of June 3rd.

**[2]**   Thus, according to the experts testimony regarding the time it takes for maggots to hatch once a body is visited by flies as well as his testimony regarding how long it takes for skin slippage to occure, coupled with the lead detectives sworn testimony as to where he claims that petitioner and Jake Silva were on the entire evening of June 2/2000, it is impossible that petitioner and Jake Silva could have murdered Renee Ramos on any of the dates she is said to have died! **(RT 397: 12-21)** Indeed, a

a security video-tape from the hair salon proved that Jake Silva and Jessie Howland were together on June 1st at 6:05 p.m.. Silva had a dark Mohawk. On June 6th, Silva's hair was burgandy. **(RT 1344, 1349)** The District Court Magistrate stated that what was overheard by petitioner's counsel was **"an off the record discussion at the prosecutor's table." (See Report and Recommendation, p. 11, lines 14, 15)** That is completely false! The reality is is that the prosecutor and his minion were caught in their scam to falsely put Jake Silva and petitioner together during the week Renee Ramos went missing, while in <u>open court</u>!* For the District Court Magistrate to state that petitioner **"does not explain exactly what exculpatory or impeachment information regarding Howland he believes was withheld,"** is grossly false! **(See Report and Recommendation, p.12, lines 6, 7)** Petitioner submits that the District Court Magistrate's claim that petitioner's claim of Jessie Howland's involvement in his prior burglary case, **"[is] speculative,"** and that **"it does not appear from the record that any connection was ever made between the two criminal cases for which Howland 'might have been a witness,'"** and that **"even if petitioner's allegations are true, there was no Brady violation because the claimed impeachment information about Howland was not material,"** is pure negligent error! **(See Report and Recommendation, p.12, lines 6-9, 12, 13)** Petitioner submits that the prosecutor and the detective were caught by their own mouths in their <u>conspiracy</u> to deprive petitioner **and Jake Silva of their United States** Constitutional Right to a fair trial! **(U.S.C. Title 18, § 241, 242 U.S.C. 42 §1982, 1983, and 1986)**

Petitioner clearly "explained exactly" that he was not with Jake Silva at any time anywhere near the time that Renee Ramos went

---

*    Petitioner had a burglary case pending against him at the time that he was arrested in this case. Those charges were dismissed "in the interest of justice" on the day after petitioner was arrested on September 16/2000, by a completely different prosecutor and judge, in a Manteca, CA, courtroom. **(p.25, habeas petition)**

missing and that the burglary discovery that was "cleverly hidden from [petitioner's defense counsel]" **(petition, p.30)** made it impossible to prove that Jessie Howland was never at petitioner's home with Jake Silva during the time Renee Ramos went missing. And that the prosecutor's actual intent was, not to provide "propensity" evidence to the jury, but was to underline put petitioner and Jake Silva together during the week Renee Ramos went missing, which the prosecutor told the jury was **"significant"** more than once during his closing statement to the jury. **(RT 1422:7-15; 1454:16-22)** In fact, the statement at **RT 1422:7-15** clearly shows the prosecutor's actual motive for presenting the so-called "propensity" evidence. Petitioner asserts that the burglary case that was pending against him prior to his arrest in this case was dismissed before he even appeared for the very first time in court following his arrest, for the purpose of hiding the burglary discovery from petitioner's counsel! And it worked. The false "propensity" evidence was material, as well as impeaching!

A defendant's federal constitutional right to a fundamentally fair trial is guaranteed by the due process clause of the Fifth and Fourteenth Amendments. Due process prohibits the use of state prosedures that underline offend the principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental; **(Snyder v. Massachusetts (1934) 291 U.S. 97, 105 [54 S.Ct. 330; 78 L. Ed. 674]; and procedures** that underline "the ultimate integrety of the fact finding process." **(Ohio v. Roberts (1980) 448 U.S. 56, 64 [100 S. Ct. 2531, 65 L.Ed.2d 597].)** The due process clause precludes the admission of evidence that is so unduly prejudicial that it renders a trial fundamentally unfair. **(Payne v. Tennessee (1991) 501 U.S.808, 825, [111 S.Ct. 2957; 115 L.Ed.2d. 721].)** The "propensity" evidence used against petitioner was introduced for no other purpose but to

falsely connect the victims boyfriend, Jake Silva, and petitioner together during the week she went missing, which was, contrary to the experts' sworn testimony, "after" Renee Ramos was dead. (RT 42:28—43: 1; 169:12-23; 397:12-21) Therefore, also exposed is the prosecutors' and the Pathologist's, Dr. John Cooper's conspiracy to falsify Renee Ramos' time of death! (CT 250:14-22; RT 396:18—397:21) Petitioner asserts that Renee Ramos was murdered long before the prosecutor claims she was because she was found in the same clothes, it appears, that she was last seen alive in on May 29/2000 -- Memorial Day. (CT 698:16—701: 2) In any event, the lead detective for the Manteca Police Department swares to God, while under oath, that Petitioner and Jake Silva were together with Jessie Howland at petitioner's home beginning on the evening of June 1st, all the way through to the afternoon of June 3rd, which, as the prosecutor claims, was "after" Renee Ramos went missing and was already dead. (CT 620:8-16, 25—621:1, 7-9, 12-26; 632:22—633: 22; RT 169:12-23; 42:28—43:1)

The detectives' fictional teenage Home Depot "party" wouldn't have sounded plausable to have occured on a weekday, and on a school night at that! Petitioner submits that the last week of school for all the kids in the Manteca Unified School District was, in fact, the week of May 29/2000. Thus, Renee Ramos was **falsely** made to appear that she was murdered on Friday, June 2nd, Saturday, June 3rd, or even Sunday night, June 4th, which would sound more reasonable to the jury for a teenage party to have occured!

For proof that Jessie Howland was being forced to lie just like Josh Burroughs was, compare the testimony recorded at RT 144:10-28 and 187:7-23) Josh Burroughs, after showing real signs of remorse for the hurt and suffering that he must have known he was causing petitioner and his family to suffer, finally confessed that he really didn't see

(13)

Renee Ramos get killed. **(RT 598:24-26; 675:27, 28; 619:1-9; 716:13, 14)** Josh testified that he lied because he though that **"it** (his car theft case) **would be done and over with, and I could just get my life into gear. And dealing with this crap is not helping me at all."** (Rt 602:7-9) Josh confessed that he lied **"for the wrong reasons."** (RT 602:4-6)

Petitioner submits that there is no guessing as to why the trial court ruled that **"the evidence is insufficient to establish the commission of the crime** (rape) **specifically charged in the accusatory pleading,"** on his 1118.1 motion following the prosecutor's case-in chief, and then went on, less than twenty-four hours later, to agree to the stated FACT that **"there was NO EVIDENCE that [petitioner] was there even,"** at the Home Depot "party!" **(RT 1050:22-24; 1086:10— 1087:19)** Petitioner submits that it was absolutely impossible for a "rational jury" to have found petitioner guilty of any crime at all! **(Roehler v. Borg, 945 F.2d. 303, 306 (9th Cir. 1991).** Petitioner sumits that Penal Code Section 1118.1 of the California Penal Code does not permit of an interpretation that gives trial judge's a discretion to refuse to order a judgment of acquittal on the specific charge in the accusatory pleading. The judgment of acquittal is **mandatory. The same mandatory language** -- "shall" -- is used in Penal Code Section 1118.1 is as found in Rule 29(a) of the Federal Rules of Criminal Procedure. There is no valid reason why Penal Code Section 1118.1 should be given a different interpretation from that given the same mandatory language found in Rule 29(a) of the Federal Rules of Criminal Procedure. This law is so strict that even if petitioner had not motioned the court for an acquittal, the court was still mandatorily obligated to acquit petitioner on the rape and the special circumstance charges, and then in general as to

all charges.

In this case the judge ruled from the beginning -- all the way from the prelimanary hearing -- that petitioner did not commit the charged crimes of rape and special circumstance, which crimes were the entire basis of the prosecutions theory as to why Renee Ramos was murdered. However, as stated previously by petitioner, the judge's pointed reply to the prosecutions theory was: **"No, I'm not buying that one." (RT 1129:3-5)**

Petitioner has easily met the requirements of the "contrary to" and the "unreasonable application" clauses of §2254(a) and § 2254(d)(1). Furthermore, petitioner's "convictions" were based on evidence that doesn't even come close to the "reasonable doubt" standard. A "rational jury" could not have found petitioner guilty of any crime at all! **(Roehler v. Borg, 945 F.2d. 303,306 (9th Cir. 1991).** Petitioner is entitled to an acquittal.**(Rule 29(a), Federal Rules of criminal procedure)**

### THE PROSECUTOR DELIBERATELY AND MALICIOUSLY WITHHELD CRUCIAL EXCULPATORY AND IMPEACHMENT DISCOVERY FROM PETITIONER.

In addition to the horrific <u>Brady</u> violations discussed already, the prosecutor also withheld a statement Josh Burroughs made to the police detectives **"two weeks ago"** when they personally served Josh a subpoena just prior to petitioner's and Jake Silva's joint prelimanary hearing. **(CT 317:21-24)** The prosecutor was even caught off guard by Josh Burroughs' admission. **(CT 317:25)** The magistrate then interupted the proceeding to clarify the matter. The magistrate asked Josh Burroughs: **"A couple weeks ago from now?"** Josh Burroughs answered: **"Yeah."** Petitioner's defense counsel then proclaimed, **"I don't have any report on that!." (CT 317:28—318:2)** The magistrate immediately barred petitioner from inquiring on the issue any

further. **(CT 318:3)** The prosecutor then admitted that the detectives did serve Josh Burroughs a subpoena **"a couple [of] weeks ago,"** and that that was the **"the last contact"** that they had with Josh Burroughs prior to the start of petitioner's prelimanary hearing. **(CT 318:4, 5)** The magistrate simply said, **"All right." (6)** The prosecutor knew, right then and there, that his detectives had just been caught withholding crucial exculpatory discovery from petitioner's defense counsel. The prosecutor attempted to lessen his culpability by stating: **"Just so everybody knows." (CT 318:7)** The prosecutor then continued to question Josh Burroughs and Josh continued to confess that **"everything that I ever told the police before 'two weeks ago' was a lie." (CT 348:25—349:10; 362:15, 16; 363:25; 365:19, 20)** Petitioner submits that, not only did the police detectives withhold Josh Burroughs' exculpatory statements from him, but they also attempted to hide Josh's statements from the prosecutor as well! **(CT 317:25)**

The District Court Magistrate states that **"the United States Supreme Court has specifically held that Brady does not require the discloser of impeachment information prior to entry of a guilty plea,"** and she went on to state that **"it necessarily follows that the withholding of impeachment information prior to a prelimanary hearing is also not a Brady violation." (Report and Recommendation, p. 11, lines 1-5)**

Petitioner submits that the discovery that the police detectives attempted to hide from everyone was crucial material evidence that had a direct bearing on petitioner's innocence and that that evidence was also crucial to petitioner receiving a fair preliminary hearing. Furthermore, the deliberate supression of Josh Burroughs'

statements to the detectives would have never come to light had Josh
not answered the prosecutor's question in the way that he did as
recorded in the Clerk's Transcript at p. 317:23, 24. The behavior of the
Manteca Police Detectives shows that they believed the statements of
Josh Burroughs confessing to the fact that he really hasn't a clue as
to who murdered Renee Ramos, could form the basis for exonerating
petitioner, and Jake Silva, for that matter! **(Arizona V. Youngblood, 488**
**U.S. 51)** For that reason also the individual prosecutor had a duty to
learn of Josh Burroughs' statements that the police detectives were
hiding from petitioner. **(Kyles v. Whitely, 514 U.S. at 437, 115 S.Ct.**
**1555, 131 L.Ed.2d 490)** The Manteca Police Detectives' behavior is
absolutely reprehensible! They know that they have "convicted" the
wrong people for Renee Ramos' murder and that Renee Ramos was not
murdered at any "Home Depot party," as stated by the lead detectives
confession while testifying under oath! **(CT 546:5—547:22; RT 975:5-**
**21)**

Petitioner has already spoken on the issue of Jessie Howland's
testimony as to when he and Jake Silva were actually at petitioner's
home on pages 10-13 of this pleading. Petitioner asks for an
evidentiary hearing in which he will call the Public Defender who
represented him in the burglary case, Rose Cardoza. Petitioner submits
that the discovery in that case will show, for a fact, when it was
that Jessie Howland, Jake Silva, and 18-year-old, Amanda, were really
at petitioner's home. Amanda will also testify that no sexual assault
against her occured whatsoever! In fact, when it was brought to the
attention of the prosecutor who the young lady was that Jessie Howland
was speaking about, the prosecutor proclaimed: **"We are interested to**
**know who she is!" (RT 192:24, 25)** Petitioner even told the prosecutor
that we had her phone number. **(RT 191:24-27)** The prosecutor never even

(17)

once attempted, as far as petitioner knows, to contact Amanda and she certainly was never a witness in this case! Petitioner submits that he has proven the real intent of Jessie Howland's testimony. It was for the sole purpose of putting Jake Silva and petitioner together during the week Renee Ramos went missing but before her body was found. **(RT 1422:7-15; 1454:16-22)**

Jessie Howland's "testimony" was completely false and the prosecutor and his minions knew that! And it really appears that the judge assisted the prosecution in presenting the evidence as well! **(RT 49:1-26; 192:28—193:1)** Indeed, the prosecutor was caught by his own mouth in <u>open court</u> while conferring with his detective on what to do about **"the ATM part."** **(RT 49:1)** Contrary to the District Court Magistrates Report, petitioner did connect the burglary case that was pending at the time that petitioner was arrested for the murder of Renee Ramos to his murder case, and he did so by exposing the prosecutor's and the detectives conversation for which they were overheard stating that Jessie Howland was a witness in petitioner's prior burglary case. Thus, again, the District Court Magistrates Report must be overturned!

The prosecutor deliberately and maliciously refused to turn over impeachment discovery that related to one of the jailhouse snitches, Charlie Cooper. Even as far back prior to the start of petitioner's prelimanary hearing, the judge <u>ordered</u> the prosecutor to subpoena Charlie Cooper to the prelimanary hearing. **(CT 103)** The prosecutor's reply: **"I am not going to subpoena him, Your Honor, and you can't make me." (ART 39:12, 13)\*** As stated in the judges order at CT 103, the judge clearly found that **"CHARLIE COOPER, is a <u>material and necessary</u> <u>witness</u>... and that his attendance is <u>material and necessary</u> at the**

---

\*   ART means Augment to Reporter's Transcript. That record is also part of the record logged by the Respondent in this case.

**prelimanary hearing in this action....**" Then, on January 28/2002, **less than 30 days before** petitioner's actual jury trial began; Petitioner is practically begging for the Charlie Cooper impeachment discovery, the prosecutor told the judge this: **"Failing to discover this stuff, I take my chances. If a fair trial cannot be had, well, I take -- then that's the due process violation that I take my chances on but it doesn't require sanctions." (ART 102:11-14)** petitioner's actual jury trial began on February 26/2002. Therefore, the prosecutor has not only blatantly disrespected the court's order to turn over the impeachment discovery to petitioner's counsel, but he has also blatantly ignored petitioner's United States Constitutional Rights as set forth in the United States Constitution and in his rights as determined by United States Supreme Court Law! **(Brady v. Maryland, 373 U.S. 83,..)\***

The District Court Magistrates statement in her Report that **"petitioner has failed to demonstrate that he suffered a Brady violation or that his due process rights were otherwise violated in relation to discovery that was 'allegedly' withheld or not received in a timely manner,"** is so far outside the realm of clearly established United States Supreme Court Law -- that petitioner is dumbfounded!

As stated by the District Court Magistrate in her Report at lines 7-9, petitioner is not saying that Manteca Police Officer, Danny Erbs testimony was false when he asked him: **"What do you think Jake did with the backpack and shoes?"** Petitioner is saying that Officer Erbs testimony that **"this was the statement that caught me most by suprise"** was used by the prosecutor to deceive the jury into believing that petitioner couldn't have known that Renee Ramos' backpack and shoes were missing at the time that he asked Officer Erb that question, which was on September 15/2000, the day petitioner was arrested. **(RT 89:19-21; 1424:13-18)** Petitioner had no idea of whether or not Jake Silva was

\*   Charlie Cooper did not appear at petitioner's prelimanary hearing.

was guilty of murdering his girlfriend. * However, Jake Silva was the number one suspect among nearly all of his peers. Regardless, petitioner argued on pages 25-27 that just nine days after Renee Ramos' body was found, the Manteca Police Department reached out to the public for help in locating Renee Ramos' missing backpack and shoes through the Manteca Bulletin News Paper. The very large headline read: **"BACKPACK MAY LEAD TO KILLER!"²** Thousands of people knew about Renee Ramos' missing backpack and shoes and it was **ninety** days <u>before</u> petitioner was arrested that the artical came out to the public.

   Petitioner also argued that the prosecutor's deceiving scheme worked so well that even the Respondent on petitioner's Direct Appeal used it to sum up his response to petitioner's argument in ground one in his Opening Brief. The Respondent replied: **"And finally, the comment about the missing backpack and shoes were facts which could only have been known by someone who was there.... Mr. Erb was a credible witness whose testimony about appellant's admissions placed appellant squarely at the core of the murder. A reasonable jury could not only believe Officer Erb but rely upon his testimony as generally cooroborating the other witnesses." (Respondent Brief, Third District Court of Appeals, No. C041516, p. 29; paragraphs 1 and 2)** And that is exactly what petitioner's jury did! The last readback petitioner's jury asked for was for the "testimony" of Officer Danny Erb! **(CT 1353)** Petitioner was convicted immediately following that readback.

   The prosecutor deliberately and methodically hid the FACT that everyone in Manteca knew about Renee Ramos' missing backpack and shoes! The Manteca Bulletin News Artical was of highly probative value to

---

   * Petitioner doesn't believe for one split second, now, that Jake Silva had anything whatsoever to to with his girlfriends murder! Jake Silva is as much as a <u>victim</u> of the Manteca Police Departments fictional Home Depot "party," as petitioner is!

   ² The News artical is attached at the very end of petitioner's habeas corpus petition.

petitioner's defense and it too was cleverly hidden from petitioner so that the prosecutor could pull-off another deceiving lie in order to win a conviction! **(Washington v. Texas, 288 U.S. 14 (2006); Burger v. U.S. 295 U.S. 78)**; Compare **Penry v. Johnson, 532 U.S. at 795,** quoting **Brecht v. Abrahamson, 507 U.S. 619, 637 (1993.))** Petitioner submits that the allegations made sufficiently charge a horrible deprivation of his United States Constitutional Rights guaranteed to him by the United States Constitution! Petitioner is entitled to an immediate release from his present custody! **(Mooney v. Holohan, U.S. 103 [373 U.S 83, 87])**

The District Court Magistrate's statement on page 15 and lines 20, 21-that there wasn't **"any evidence that the prosecutor had any intent to deceive the jury,"** is horribly erroneous!

> **THE TRIAL COURT HORRIBLY ERRED WHEN IT REFUSED TO INSTRUCT PETITIONER'S JURY TO THE FACT THAT JOSH BURROUGHS WAS A PERJURER, WHICH LIGHTENED THE PROSECUTOR'S BURDEN OF PROOF AND DENIED PETITIONER OF HIS UNITED STATES CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL.**

On March 13/2002, just one day after the prosecutor had rested his case-in-chief against petitioner, jury instruction discussions took place between the judge and all attorney's. Petitioners counsel had asked the court to instruct the jury and tell them that Josh Burroughs did commit perjury. The judge denied petitioner's requested jury instruction after just stating that **"there's no question in my mind that Josh Burroughs committed perjury."(RT 1116:19-21)** The judge erroneously reasoned that petitioner's requested jury instruction was not appropriate **"for just a typical witness." (RT 1116:24)**

Just prior to the start of petitioner's actual jury trial, while petitioner was still begging for the Charlie Cooper impeachment

discovery, the judge pointedly told the prosecutor this: **"And let's face it, the issue of who is lying and who is telling the truth is paramount in this case. That's all your case is built upon is who is lying and who is telling the truth."(RT 32:23-25)** Inspite of both of the judge's statements as cited above petitioner was still denied his requested instruction on perjury.

Petitioner's entire theory in defense against the accusations made against him was based on the FACT that Josh Burroughs was lying when he implicated him in the murder of Renee Ramos! Moreover, since the judge had **"no question in [his] mind that Josh Burroughs committed perjury,"** it only seems logical that the court should have informed petitioner of the exact part or parts of Josh Burroughs' testimony that it believed to be perjury, and the jury should have been further instructed to disregard that testimony as well. Instead, the jury was permitted to deliberate on everything that Josh Burroughs testified to, whether directly or indirectly. Petitioner's trial was horribly infected because of the trial court's instructional error! Petitioner's United States Constitutional Right to due process of law was massively violated! **(Estelle v. McGuire, 502 U.S. 62, 71-72, (1991);see also Henderson v. Kibbe, 431 U.S. 145, 154 (1977);Cupp v. Nauhten 414 U.S. 141,146-147 (1973).**

Petitioner's requested instruction on the FACT that Josh Burroughs did commit perjury, a felony, was required to be given and was **"basic to [petitioner receiving] a fair trial.(United States v. Escobar de Bright, 9th Cir. 1984)742, F.2d 1196, 1201; Matthews v. U.S. 485 U.S. 58 (1998)).** "And let's face it, the issue of who is lying and who is telling the truth is paramount in this case,"** said the judge. **"That's all your case is built upon is who is lying and who is telling the

truth." (RT 32:23-25) The judge had **"no question in [his] mind that Josh Burroughs Committed perjury." (RT 1116:19-21)**

Accordingly, the District Court Magistrate's reliance on the opinion by the California Court of Appeal on petitioner's Direct Appeal at pages 21-22, for her denial of petitioner's habeas corpus claim above, is horribly erroneous! Petitioner asks that her Report and Recommendation as to the issue be overturned.

> **THE TRIAL COURT DID VIOLATE PETITIONER'S UNITED STATES CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL BY ADMITTING HEARSAY TESTIMONY THAT THE PROSECUTOR DELIBERATELY AND MALICIOUSLY ORCHESTATED IN ORDER TO PERSONALLY VOUCH FOR THE CREDIBILITY OF ONE OF THE JAIL-HOUSE SNITCHES, MARCUS HOPKINS.**

Petitioner rests his arguement on what he has clearly shown on on pages 39-42 of his Taverse to Respondent's Answer. However, petitioner will add that the prosecutor's actual intended scheme was to create a conflict of interest between the Public Defender's Office and himself. There was none! It was a private attorney who was representing Marcus Hopkins, not the Public Defender. The prosecutor tricked the court into dismissing my public defender who had already been working for over a year in preparing for my trial. I was then appointed a private attorney, Bob Wright. I was taken to trial just three months later. That's horrid!

The District Court Magistrate has, again, completely ignored the FACTS of the court record as they have been presented by petitioner. The prosecutor did create the "conflict of interest" that caused petitioner to lose his public defendar. The prosecutor's misconduct is absolutely reprehencable and it denied petitioner a fair trial. **(Donnelly v. DeChristoforo, 416 U.S.637, 643, 47-48 (1974); U.S. v. Young 470 U.S. 18 (1985).**

Petitioner also submits his **new counsel did die** from a "brain tumor" just months after petitioner was convicted. Petitioner respectfully asks for an evidentiary hearing on that matter as his right to competent representation was denied. Petitioner rests his arguement as to ground 6 of his habeas petition on the facts therein.

### ADMITTING JESSIE HOWLAND'S TESTIMONY OF AN UNCHARGED ACT OF SEXUAL ASSAULT DID VIOLATE PETITIONER'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL.*

The Supreme Court has ruled that evidence of prior crimes, introduced for no other purpose than to show criminal disposition would violate the Due Process Clause. **(Spencer v. Texas (1967) 385 U.S. 554, 574-575 [87 S.Ct.648, 17 L.Ed.2d 606, Conc. and dis. opn. of Warren, C.J.)** Petitioner has shown that the prosecutor's sole intent for admitting Jessie Howland's testimony was so that he could put petitioner and Jake Silva together during the week Renee Ramos went missing, as previously discussed. Petitioner also has shown that the court assisted the prosecution in their conspiracy to that end. The "propensity" evidence was nothing but a farce and a sham because petitioner told the prosecutor who the young woman was and he even told the prosecutor that he had her phone number as well. **(RT 192:24, 25; 191:24-27)** Still, the prosecutor never even attempted to go and talk to the young lady. He certainly did not call her as a witness in petitioner's trial. Petitioner submits that that is massively significant and it clearly shows the prosecutor's real intent to

* Petitioner has clearly shown already that the testimony by Jessie Howland was completely false! Petitioner rests his arguement on the points raised in his Opening Brief on Direct Appeal and his points throughout this pleading starting at page 10. Petitioner will briefly restate a few facts that he feels are crucial to the resolution of this issue. Petitioner rests his arguement with regard to ground 7 of his habeas petition  on the FACTS therein.

(24)

have Jessie Howland's "testimony" admitted at petitioner's trial. **(RT 1422:7-15; 1454:16-22; see also pages 10-13, and pages 17 and 18 of this pleading).**

## CONCLUSION

For all of the foregoing reasons, petitioner asks that the Recommendation of the District Court Magistrate for his habeas corpus petition to be denied, be overruled.

Dated: March 19/2009

Respectfully, submitted,

Ty Lopes (Petitioner in Pro se)

PROOF OF SERVICE

1

2  CASE No.: 2:06-cv-01657  MCE CHS
   U.S. District Court (Eastern District of California)

3
   CASE NAME:  LOPES v. CAMPBELL, et al.,

4

5   I declare:

6        I am the defendant and the petitioner in this case. I am
    over the age of eighteen and I am currently housed at Mule
7   Creek State Prison in Ione, California.

8        On March 24/2009, I served the attached OBJECTION TO
    MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION FILED IN THIS
9   COURT ON MARCH 11/2009, by placing a true copy thereof
    enclosed in a sealed envelope with postage thereon fully
10  prepaid, in the outgoing prison mailbox here at Mule Creek
    State Prison, addressed as follows:

11

12  Tami M. Warwick
    (Deputy Attorney General)
    1300  "I" Street, suite #125
13  P.O. Box 944255
    Sacramento, CA 94244.-2550
14

15       I declare under the laws of the State of California and
    under the penalty of perjury that the foregoing is true and
16  correct, and that this declaration was excuted on March 24/2009,
    at Ione, California.
17

18

19  Ty Lopes
    _____
    Ty Lopes (Petitioner and declarant)    Signature

20

21

22

23

24

25

26

27

28